Hester MAGGARD, Individually and as
Administratrix of the Estate of
Edmond Curtis Maggard

v.

John J. O'CONNELL, et al., Appellants.

No. 82–1942.

United States Court of Appeals,
District of Columbia Circuit.

Filed 16 Aug. 1982.

Decided 29 March 1983.

William F. Hanrahan and Jeanne K. Beck, Washington, D.C., were on brief, for appellants.

David J. Frantz, Washington, D.C., was on brief, for appellee.

Before WILKEY and GINSBURG, Circuit Judges and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

Appellee Hester Maggard filed suit in federal district court seeking retirement benefits allegedly due her husband from the United Mine Workers of America Health and Retirement Funds. The district court originally granted summary judgment for the Trustees of the Funds, but that grant was reversed by a prior opinion of this court. *See Maggard v. O'Connell*, 671 F.2d 568 (D.C.Cir.1982). After further proceedings the district court granted summary judgment for Mrs. Maggard and this appeal followed. We now affirm, largely in agreement with the district court and for additional reasons.

## I. BACKGROUND

### A. *Procedural History*

Edmond Maggard filed an application for a pension on 17 March 1966 with the United Mine Workers of America Health and Retirement Funds (Trustees). A series of denials and reapplications culminated in a final denial of the petition in May 1980. Maggard having died four months before, his wife then sued, both individually and as administratrix of his estate.

The district court granted summary judgment for the Trustees in a 2-page order which merely deferred to their determination that Maggard had not worked long enough as a miner to qualify for a pension. There was no discussion of the evidence.

This court remanded, noting that the district court had a responsibility to examine the entire record with care to ensure that the Trustees' decision was adequately supported. The court noted further:

> [O]ur understanding of the issues makes it appear that, indeed, substantial evidence does *not* support appellees' position. While we may leave open the possibility that the district court may ultimately conclude the contrary, our impression underlines the appropriateness of a remand for fuller, more explicit consideration and analysis by the district court.

671 F.2d 568, 572–73 (D.C.Cir.1982).

On remand, the district court permitted new evidence to be filed concerning Maggard's claims, which was incorporated into the record and reviewed by the Trustees. When the Trustees sustained their decision to deny Maggard's pension application, both sides again moved for summary judgment in the district court. This time the district court granted summary judgment for Mrs. Maggard.

### B. *Standards for Award of a Pension*

An ex-miner may be awarded a pension upon any one of three showings. First, he may show that he worked in the mines for 20 of the 30 years immediately preceding the pension application. *See* Resolution 83 at 5, *reprinted in* Joint Appendix (JA) vol. II at 254, 258. For some time, apparently, this was the only way in which a pension could be earned. However, according to the terms of the settlement in *Blankenship v. United Mine Workers of America Health and Retirement Fund of 1950*, Nos. 2186–69 & 2350–69 (settlement approved by D.D.C. 2 Jan. 1973), *reprinted in* JA vol. II at 223, a miner otherwise ineligible can still qualify for a pension if he meets either of two tests adopted in *Blankenship*.

Under *Blankenship* Test One a miner is eligible if he can show, inter alia, that he completed at least 20 years of classified service at any time, including at least 5 years of "signatory service" after 28 May 1946.[1] *Blankenship* Settlement at 4, *reprinted in* JA vol. II at 226.

---

1. "Classified service" refers to non-supervisory positions classified in the bituminous coal wage

Under *Blankenship* Test Two a miner is eligible if he completed 20 years of classified service prior to 1953, including any signatory service at all after 28 May 1946, and was physically unable to satisfy the "20-out-of-30" requirement because "permanently disabled as a direct result of industry service." *Blankenship* Settlement at 5, *reprinted in* JA vol. II at 227.

Another principle of importance to this case derives from the settlement agreement in *Maggard v. Huge,* No. 76–2219 (settlement approved by D.D.C. 14 Mar. 1979). A Trustees' Policy Statement adopted as part of that agreement, *reprinted in* JA vol. II at 271, provides up to 4 years additional credit to miners if a mine-related disability or disease "was the direct and proximate cause of applicant's inability to work in the coal industry for a period of time of ascertainable duration." *Id.*

It is important to note that the *Maggard v. Huge* credit could be applied to either of the two *Blankenship* tests. Under *Blankenship* Test One a miner with a *Maggard v. Huge* disability would need only 16 years of classified service including at least one year of signatory service. Under *Blankenship* Test Two such a miner would need 16 years of classified service prior to 1953, including any signatory service at all after 28 May 1946. In the latter case, however, the miner would also need to show that he had a *permanent* mine-related disability, not merely one that left him unable to work in the mines for an ascertainable period.

The *Maggard v. Huge* disability test and the *Blankenship* Two disability test are different, despite an apparently contrary statement in the Trustees' brief. Brief for Appellants at 32. Thus, for example, an injury that kept a worker out of the mines for two years, after which he returned to work, would not satisfy the *Blankenship* Test Two requirement even though it gave rise to two years credit under *Maggard v. Huge.*

agreement then in effect; "signatory service" refers to employment by an employer who is signatory to such coal wage agreement.

**2.** Maggard's attorney persists in stating that Maggard retired from the coal industry in 1958.

## C. *Matters Not in Dispute*

The years after 1936 are not in dispute. Maggard had 7¼ years of classified service after 1936, including 4¼ years of signatory service. He ceased mining altogether in 1956 at the age of 48.[2]

In addition, the Trustees have credited Maggard with 6½ years of classified service for the period 1921 to 1936. Thus, it is undisputed that Maggard had at least 13¾ years of classified service, including 4¼ years of signatory service.

To qualify under *Blankenship* Test One, therefore, Maggard needs at least ¾ year of signatory credit by dint of a *Maggard v. Huge* disability and 5½ years of classified service by way of additional credit for 1921–1936 (minus up to 3¼ years possible additional *Maggard v. Huge* disability credit). Under this test, Maggard need not show any *permanent* disability, but only that he was prevented by a disease or injury from working as a miner for a given period of time of at least ¾ year.

To qualify under *Blankenship* Test Two, Maggard needs to show a permanent mine-related disability (for which he will also get 4 years of *Maggard v. Huge* disability credit) and an additional 2¼ years credit during 1921–1936.

## D. *Matters in Dispute*

### 1. Years of Service.

Mrs. Maggard claims that, with the exception of the latter half of 1929, her husband worked full-time in the coal industry from January 1921 through December 1936. The Trustees, however, have only given him credit for 6½ of those 15½ years. Thus, 9 years are in dispute: specifically, January 1921 to October 1925 (4¾ years); 3 months of 1929; half of 1930; and January 1931 to July 1934 (3½ years).

But no employment credit was given him by the Trustees for periods after 1956 and nowhere does Maggard's attorney dispute that finding.

| Year | Maggard Claims | Trustees Grant | In Dispute |
|------|---------------|----------------|-----------|
| 1921 | 1 | 0 | 1 |
| 1922 | 1 | 0 | 1 |
| 1923 | 1 | 0 | 1 |
| 1924 | 1 | 0 | 1 |
| 1925 | 1 | ¼ | ¾ |
| 1926 | 1 | 1 | 0 |
| 1927 | 1 | 1 | 0 |
| 1928 | 1 | 1 | 0 |
| 1929 | ½ | ¼ | ¼ |
| 1930 | 1 | ½ | ½ |
| 1931 | 1 | 0 | 1 |
| 1932 | 1 | 0 | 1 |
| 1933 | 1 | 0 | 1 |
| 1934 | 1 | ½ | ½ |
| 1935 | 1 | 1 | 0 |
| 1936 | 1 | 1 | 0 |
| | 15½ | 6½ | 9 |
| Post-1936 | 7¼ | 7¼ | 0 |
| Totals | 22¾ | 13¾ | 9 |

2. Disability.

Mrs. Maggard claims that, upon his retirement from the coal industry (said to be in 1958), her husband was totally disabled by both pneumoconiosis (otherwise known as silicosis or "black lung"), a mine-related disease, and arteriosclerotic heart disease.

The Trustees, on the other hand, claim "that Maggard was not disabled by pneumoconiosis as of the date of his last coal industry employment in 1956, and that pneumoconiosis was not the cause of Maggard's inability to work in the coal industry during the period 1956 to 1960." Brief for Appellants at 17. Rather, at that time, he suffered from arteriosclerotic heart disease and myocardial failure. His problems with silicosis did not arise until 1963.

E. *District Court Findings*

1. Years of Service.

The district court granted Maggard complete credit for the 9 years in dispute during the period 1921–1936.

2. Disability.

The district court did not reach this issue, believing it to be foreclosed by the prior opinion of this court.

The issue of whether Maggard was prevented from continued employment in the coal industry on account of an occupational disease . . . is precluded by the scope of the mandate from the Court of Appeals. The fact that Maggard was disabled by pneumonoconocis [sic] at the time of his retirement was never challenged by the Trustees during the original proceedings or on appeal, which was recognized by the Court of Appeals in their decision. . . . This is so even though Plaintiff claimed Maggard's total disability when this action was first before the court.

Mem.Op. at 2 n. *, *reprinted in* JA vol. I at 135.

## II. ANALYSIS

A. ·*Years of Service*

As noted, this court's prior opinion intimated that substantial evidence did *not* support the Trustees' position. The court did not, however, purport to resolve the question. Rather, it remanded to the district court for a "painstaking review" of the evidence and for "careful and explicit analysis." 671 F.2d at 573. On remand, the district court permitted the introduction of new evidence relevant to Maggard's employment from 1921 to 1936. Most notably, the Trustees introduced payroll records from 1922 to 1933 from the mines in which Maggard claimed to have worked.

These payroll records led the Trustees to alter their findings in some respects. For example, they had previously granted full credit for 1925, but now gave only ¼ year credit. They had previously denied credit for 1928, 1929, and 1930 and now granted, respectively, 1 year, ¼ year, and ½ year. Otherwise, the Trustees stood by their original findings, which they considered to be further substantiated by the payroll records.

In addition to the 6½ years already granted, Maggard claims credit for the following periods during 1921 to 1936.

*Jan.–June 1921*

During this period, Maggard (then 13 years' old) claims to have worked for the

Dorton Elkhorn Coal Company. He presented testimony from his wife and sister to that effect, as well as school records indicating that he was not enrolled in school at that time. Apparently, it was not unusual in those days for a 13 year old to be employed in the mines.

The Trustees denied credit based on the testimony of another sister who thought Maggard didn't start work until a year or so later; the testimony of an employee in the Clerk's Office of the County Court that Maggard was in school in 1921; and a lack of Kentucky records showing that the Dorton mine was operating in 1921.

On remand, appellee introduced Kentucky state mining records confirming that the Dorton Coal Company was in operation in 1921. No further evidence was offered by the Trustees.

The district court awarded Maggard the ½ *year credit* in dispute. The evidence seems clearly to favor appellee, and we agree with the finding of the district court.

*July 1921 to Dec. 1924*

Maggard claims to have worked for the Edgewater Coal Company during this time. He relies primarily on testimony of his wife and sister, and the testimony of and affidavits from a number of co-workers.

Apparently, some of this evidence is contradictory as to exactly in which mine Maggard worked (there were at least three in the area), and the Trustees felt justified in rejecting it on that ground. This court, in its prior opinion, held these variances to be an insufficient basis for a denial of credit since the important fact is only that Maggard was employed *somewhere* in the coal industry.

> Granted, in certain instances it might reasonably be concluded that if the mine's name was not recalled correctly, the other testimony of that witness, or the testimony of another witness, was suspect. But this is not always so. For instance, the testimony of Blanton would seem to present an instance where, regardless of whether the mine's name was known, there was unequivocal testimony that Maggard was working in some mine, somewhere, at the appropriate time. We should be particularly reluctant to require errorless specificity and documentation with respect to events occurring from forty-five to sixty years ago....

671 F.2d at 576.

On remand, the Trustees proffered payroll records for all three mines. There are no records, however, for 1921 and those for 1922 and 1923 cover only a small portion of the time. Thus, the Trustees' decision to sustain their denial of credit for this time is still not supported by substantial evidence. The records for 1924, however, are apparently complete for all three mines and show no entries for Maggard. Despite the admitted poor condition of the records, the lack of any entries for Maggard in 1924 would seem to be a sufficient ground for denying him any credit for that time.

The district court awarded a full 3½ years credit for this period. We conclude that Maggard should have been awarded *2½ years credit.*

*1925*

The Trustees had previously awarded Maggard a full year of credit. On the basis of payroll records for the Big Branch mine, complete from 1 Jan. to 15 Oct., that showed Maggard only earned a minimal amount, the Trustees gave credit only for the period not covered by the records, or ¼ year.

There are no records at all, however, for one of the other mines in the vicinity (the Coaldale). Maggard introduced plenty of evidence that he was working in *some* mine during that period, and the Trustees originally found that evidence to be credible. Incomplete payroll records do not now make it incredible.

The district court found that Maggard should receive an additional ¾ *year credit.* We agree.

*1929*

Maggard allegedly worked at the Coaldale mine during the first half of this year. Payroll records, however, showed that Maggard worked only ¼ year at Coaldale before

it shut down on 29 March and didn't begin working again until 28 December when he started with the Henry Clay mine. The district court found that Maggard worked from January through April, but failed to specify whether this entitled Maggard to the ½ year credit claimed by Mrs. Maggard or only to the ¼ year awarded by the Trustees. We find that substantial evidence supports the Trustees' grant of only ¼ year.

*1930 and 1931*

This court noted in its previous opinion that Maggard had introduced ample testimonial and documentary evidence to show he was working in the coal industry during this time. The Trustees claim that complete payroll records for the Henry Clay mine indicate that Maggard only worked ½ year in 1930 and not at all in 1931. However, Henry Clay was apparently not the only mine operating in the area at this time. (The record, generally, it should be noted, is very poor.) Moreover, as the district court noted, "there is no way of assuring that what the Trustees characterize as 'complete' records are in fact complete since—as the Trustees admit—the records were found in a deteriorated condition." Mem. Op. at 3, *reprinted in* JA vol. I at 136. Given the strength of the evidence offered by Maggard, the payroll records introduced by the Trustees must be considered inconclusive.

We agree with the district court's conclusion that Maggard is entitled to an additional *1½ years credit* for this period.

*1932 to 1934*

There was also ample evidence that Maggard was employed throughout this period, either at the Henry Clay mine or by the Greenough Coal Company. The Trustees rely on incomplete payroll records for the Henry Clay mine and the fact that witnesses couldn't agree on where Maggard worked. They granted only ½ year credit for this entire time. We agree with the district court that Maggard should receive an additional *2½ years credit*.

In sum, Maggard is entitled to 7¾ years credit in addition to the 13¾ already granted by the Trustees. Thus, Maggard, for purposes of his pension application had 21½ years of classified service, including 4¼ years of signatory service.

**B. *Disability***

1. Foreclosure.

■ A lower court is bound by the mandate of a federal appellate court as the law of the case and, generally, is without power to reconsider issues decided on a previous appeal. *City of Cleveland v. Federal Power Commission,* 561 F.2d 344, 346–47 (D.C.Cir.1977). However, the issue must actually have been decided " 'either expressly or by necessary implication' " on that appeal. *Id.* at 348 (quoting *Munro v. Post,* 102 F.2d 686, 688 (2d Cir.1939)). The mere fact that it could have been decided is not sufficient to foreclose the issue on remand. "[T]he doctrine, unlike res judicata, does not apply to points not decided on a previous appeal, even though they could have been." *Id.*

Thus, in deciding what, if any, issues have been foreclosed by the previous appeal, the focus is wholly on the prior opinion of this court. In order to understand the scope of that opinion, however, it is necessary to rehearse the procedural posture of the case at that time.

When the suit was brought, the Trustees had not decided Maggard's disability claim, either under *Blankenship* Test Two or under the *Maggard v. Huge* settlement, because they determined that Maggard had fewer than 16 years of service.[3] Brief for Appellants at 34. Similarly, the district court did not reach the issue. The district court simply affirmed the finding of the Trustees as to the years of service. This court then reversed that finding and remanded to the district court. There was no need for this court to reach and resolve the question of Maggard's disability.

---

**3.** Maggard's attorney claims that the Trustees in fact decided this issue, Brief for Appellees at 14, but the Record, including counsel's own statements, indicates otherwise. *See, e.g.,* JA vol. III at 359.

This is not to say, however, that this court could not properly have reached the question. The issue was *potentially* before the court. In the original pleadings Mrs. Maggard claimed that her husband had been permanently disabled by pneumoconiosis. JA vol. I at 2. This claim was reiterated in her Motion for Summary Judgment, *id.* at 21, a motion which, if granted, would have necessitated a finding that Maggard was so disabled. The Trustees stated in their Answer that they lacked "knowledge or information sufficient to form a belief as to the truth of the allegation that Maggard had been disabled by pneumoconiosis." JA vol. I at 7. The question of disability was, therefore, an issue in the case. The Trustees, however, did not file an Opposition to Plaintiff's Motion for Summary Judgment and, thus, never briefed the issue.

On appeal Mrs. Maggard argued the issue of disability, *see* Brief of Appellant in No. 81–1501 at 18–20, and asked this court to "remand for entry of judgment in favor of appellant," *id.* at 21, an action which would have necessitated a finding that Maggard was disabled. The Trustees again neglected to brief the issue. They cannot be said, however, to have conceded the point.

Counsel for Mrs. Maggard claims that counsel for the Trustees "admitted at oral argument before this Court" that Maggard was disabled by pneumoconiosis. Brief of Appellee at 12. That claim is completely erroneous. In fact, the tape of oral argument reveals exactly the opposite. Counsel for Mrs. Maggard acknowledged that the disability had not been recognized by the Trustees.

Court: The disability hasn't been ruled on yet.

Counsel: It hasn't your honor.

Court: Because they haven't reached a total of 16, so they don't need to reach the question of disability. That's right?

Counsel: I think that's ... well ...

At this point, a new question interrupted the answer, but Counsel later stated:

We were at a minimum trying to get over that 16-year hump so that consideration could be given to his disability.

Counsel appearing on behalf of the Trustees explicitly stated that the issue was still in doubt and should properly be resolved, first, by the Trustees.

Court: If this court concedes 16 years and one month of signatory service then presumably it would go back to the district court to discuss the disability question, is that right?

Counsel: I think it would probably have to go back to us to address that question.

Court: Go back to the fund?

Counsel: Yes.

Court: Which has never addressed the issue?

Counsel: It has not.

In sum, the disability question was by no means conceded by the Trustees despite their failure to brief it. For this court to have resolved the issue on the prior appeal (absent any Trustees or lower court decision to review), the court would have had to find that the proper resolution was so obvious on the basis of the record that a remand on that issue would have been "unduly wasteful of judicial resources." *Independent Bankers Assoc. v. Heimann,* 613 F.2d 1164, 1167 (D.C.Cir.1979). There is no such finding in the Court's opinion.

To support her claim that the issue is foreclosed, Mrs. Maggard points to two passages in the prior opinion. The first of these passages poses little problem. In the BACKGROUND section, the panel states that Maggard began working in the coal industry "at an early age and retired in 1958, by which time he was totally disabled by pneumoconiosis, a mine-related disease, and arteriosclerotic heart disease." 671 F.2d at 569. This background statement cannot be considered a resolution of the issue. Indeed, this is merely the sort of disputed factual allegation that is properly assumed to be true for purposes of judging the propriety of a grant of summary judgment for the other side. *See Bishop v. Wood,* 426 U.S. 341, 347, 96 S.Ct. 2074, 2078, 48 L.Ed.2d 654 (1976); *Abraham v. Graphic Arts Intern. Union,* 660 F.2d 811, 814–15 (D.C.Cir.1981).

The second statement, however, is not so easily disposed of.

[A]ppellant in this action claims that her husband met the requirements of *Blankenship* Test Two: that he (1) completed 20 years of classified service prior to 1953, (2) had at least some signatory service after 28 May 1946, and (3) was physically unable to satisfy the "20-out-of-30" requirement because of a permanent mine-related disability. Appellees have not challenged—in their brief or at oral argument—that Maggard met the latter two requirements, and counsel for appellant conceded at oral argument that, with respect to the first requirement, nothing in the post-1937 period was disputed. *Thus, the crux of this case is how many years' credit is due Maggard for the 1921–37 period, for the entirety of which he claims employment.*

671 F.2d at 572 (emphasis in original).

This passage would seem to indicate that the Trustees had effectively conceded the disability issue. As noted, such a reading would be contrary to fact. Thus, the more accurate view is that disability simply wasn't an issue for purposes of that appeal since the court was only reviewing and reversing the grant of summary judgment for the Trustees based on years of service. The court was not purporting to resolve the entire pension controversy.

■ The language of the passage is, perhaps, unfortunate, and it is understandable that the district court considered the disability issue to be foreclosed. But the passage should not be read to encompass any finding as to the state of the record on the disability question. As noted, the doctrine of the law of the case, unlike res judicata, does not apply to an issue simply because it *could* have been decided on the previous appeal.

Further indication that this court did not purport to resolve the disability question under either *Blankenship* Test Two or the *Maggard v. Huge* settlement is provided by the following excerpt:

Because the findings of the district court may make unnecessary, one way or the other, the resolution of *Maggard v. Huge's* applicability, we do not reach this issue today. We note, however, that the *Maggard v. Huge* settlement eliminates as a basis for denying disability credit the fact that Maggard failed to obtain a workers' compensation award. The issue, should it become necessary to reach it, appears susceptible to resolution with expedition.

671 F.2d at 572 n. 22. Thus, the court left the disability issue to be resolved at an appropriate point in the proceedings.

2. Appropriate Resolution.

Despite their continued conviction that Maggard had completed less than 16 years of service, the Trustees reviewed and decided Maggard's disability claim on remand. *See* JA vol. II at 46–102. The hearing officer concluded "that the medical records in Mr. Maggard's file do not establish that Mr. Maggard was disabled by pneumoconiosis when he left industry employment in 1956, or that such disease was the cause of his inability to work in the coal industry for the period 1956 through 1960." *Id.* at 53.

■ Our own review of the Record indicates that this finding is supported by substantial evidence. There are no 1956 medical records. A 1958 medical report indicates that Maggard suffered from "Arteriosclerotic Heart Disease with Myocardial Failure." *Id.* at 56. A 1959 report shows "some early changes in his lungs associated with and seen in pulmonary emphysemia," but concludes that he is not "functionally . . . disabled by it's presence at this particular time." *Id.* at 58. Not until 1963 did two physicians conclude that Maggard was suffering from silicosis and that he was totally disabled by silicosis and arteriosclerosis. *Id.* at 59; *id.* at 61.

Even assuming, however, that Maggard was not disabled by silicosis until 1963, his pension claim is not thereby defeated. We have seen that he is entitled to 21½ years of classified service, including 4¼ years of signatory service. Thus, to meet the requirements of *Blankenship* Test One he need only establish, under the *Maggard v. Huge*

settlement, that he was prevented from gaining an additional ¾ year of signatory service as a result of a mine-related disability. In 1963, Maggard turned 55. At that young age, we may assume that a man of Maggard's experience could easily have found employment for ¾ year if he had not been disabled. The fact that Maggard was also suffering from heart disease should not defeat his claim since it is impossible to parse out the symptoms corresponding to each condition, to determine the extent to which the silicosis caused or aggravated the heart condition (there was some evidence, it should be noted, that Maggard was suffering from silicosis as early as 1946, *see id.* at 83), or to conclude that without any silicosis Maggard would still have been so totally disabled as to be unable even to get an additional ¾ year of signatory service credit.

In sum, the Record evidence indicates so overwhelmingly that Maggard is entitled to at least ¾ year of additional signatory credit under the *Maggard v. Huge* settlement that no purpose would be served by remanding to the district court for preliminary consideration of the issue. *Independent Bankers Assoc. v. Heimann,* 613 F.2d 1164, 1167 (D.C.Cir.1979). The award of this pension has been improperly delayed by the Trustees for over 16 years, compounding litigation costs and rendering the final award useless to Mr. Maggard. Let there be no more delay.

The judgment of the district court is *Affirmed.*