**Anthony SKIRLICK, as an Individual and as a Representative of a Class, et al., Appellants,**

v.

**FIDELITY & DEPOSIT COMPANY OF MARYLAND, Appellee.**

**No. 87–7154.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 17, 1988.

Decided Aug. 5, 1988.

Glenn H. Carlson, Washington, D.C., for appellants.

Mitchell H. Stabbe, Washington, D.C., for appellee.

Gary W. Eads, Domenic V. Torchia and Dennis M. Reardon, pro se.

Before ROBINSON and D.H. GINSBURG, Circuit Judges, and KAUFMAN,* Senior District Judge.

Opinion for the Court filed by Senior District Judge KAUFMAN.

FRANK A. KAUFMAN, Senior United States District Judge:

Appellants are former air traffic controllers who seek damages allegedly sustained as a result of the 1981 strike by members of the Professional Air Traffic Controllers Organization (PATCO).[1] Appellee is the Fidelity & Deposit Company of Maryland (F & D), the underwriter of a fidelity bond issued to PATCO to insure the union against losses caused by fraudulent or dishonest acts of its officers. Appellants essentially contend that the PATCO officers who organized and directed the strike violated their fiduciary duty to the union members, and that that breach of duty entitles appellants to prevail against F. & D. In granting summary judgments to F & D, the district court concluded that appellants did not meet two conditions precedent specified in the bond: (1) appellants did not file a proof of loss within four months of the discovery of the loss, and (2) appellants failed to initiate this case within one year of the discovery of the loss. The district court also ruled that the fidelity bond did not cover the actions of the PATCO officials.[2] Since we agree with the

district court regarding bond coverage, we reach only that issue in this appeal.[3]

I.

"There is no federal legislative standard for bonds 'executed under any law of the United States' so we look to state law bond provisions and construction for guidance." *United States ex rel. Mississippi Road Supply Co. v. H.R. Morgan, Inc.*, 542 F.2d 262, 267 (5th Cir.1976), *cert. denied*, 434 U.S. 828, 98 S.Ct. 106, 54 L.Ed.2d 86 (1977) (quoting 28 U.S.C. § 1352). The parties agreed at oral argument that (1) PATCO is an unincorporated association governed by the laws of the District of Columbia and (2) the bond in question was executed in Baltimore, Maryland and was delivered to PATCO in Washington, D.C. Thus, either Maryland or District of Columbia law governs construction of the bond. *See Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C.1970). Because both jurisdictions apply similar standards of interpretation and construction of insurance contracts, we need not determine which law applies. *Compare Watson v. U.S.F. & G. Co.*, 231 Md. 266, 271, 189 A.2d 625, 627 (1963); *Government Employees Ins. Co. v. DeJames*, 256 Md. 717, 720, 261 A.2d 747, 749 (1970) *with American Ins. Co. v. Tutt*, 314 A.2d 481,

---

* Of the United States District Court for the District of Maryland, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The strike commenced on August 3, 1981 after PATCO and the Federal Aviation Administration failed to agree with regard to a new collective bargaining agreement. At that time, over seventy percent of the federally employed air traffic controllers walked off the job. After the strikers refused to obey a court order to return to work, President Reagan fired the approximately 11,500 PATCO members who remained on the picket lines as of August 5, 1981. The appellants did not participate in the strike.

2. F & D also moved for summary judgment on two additional grounds which the district court did not reach: (1) appellants lacked standing to sue on the bond and (2) appellants' prior knowledge of PATCO strike procedures and prior strikes barred any claim on the bond. The parties do not raise either issue in this appeal. Indeed, the only issue stated in this appeal is the liability of F & D.

3. Appellants initially asserted subject matter jurisdiction under 28 U.S.C. § 1331. However, appellants have since invoked jurisdiction granted in 28 U.S.C. § 1352, which provides:

The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.

PATCO, as a labor organization, was required by 29 U.S.C. § 502(a) to obtain the fidelity bond at issue in this case.

Because subject matter jurisdiction exists under 28 U.S.C. § 1352, we need not reach the question of whether jurisdiction also is present pursuant to 28 U.S.C. §§ 1331 or 1337 and the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 401 et seq. See Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (re the "arising under" requirement).

485 (D.C.1974); *Dryer v. Liberty Mut. Ins. Co.*, 248 A.2d 504, 505 (D.C.1968).

## II.

Congress enacted the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.*, in 1959 to ensure, *inter alia,* "that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations." 29 U.S.C. § 401(a). Union officials "occupy positions of trust in relation to [the union] and its members as a group. It is therefore, the duty of each such person ... to hold [the union's] money and property solely for the benefit of the [union] and its members." 29 U.S.C. § 501(a). Congress has provided that each official who handles money of a union with "property and annual financial receipts" of more than $5,000 in value "shall be bonded to provide protection against loss by reason of acts of fraud or dishonesty on his part directly or through connivance with others." 29 U.S.C. § 502(a).

The surety bond written by F & D for PATCO provides, in relevant part:

> The Underwriter ... agrees to indemnify the Insured ... against any *loss of funds* or other property ... through any *fraudulent or dishonest acts committed by any Employees,* acting alone or in collusion with others....

J.A. 251, 257, 278, 281 (emphasis added).

Appellants have not specifically identified which of two surety bonds written by F & D for PATCO is sued upon in this case. Bond number 596–06–43–A became effective on September 22, 1977 and was cancelled and replaced on September 22, 1981 by Bond number 596–06–43–B. PATCO went on strike on August 3, 1981; presumably preparations for the strike occurred prior to that date. In any case, both bonds contain the same language regarding coverage for fraudulent and dishonest acts, and differ only with regard to indemnification amounts and names of union officers

insured. Those differences are not relevant in this appeal.[4]

But what is most relevant is that riders attached to each bond, as issued, specifically deleted faithful performance coverage and substituted fraud and dishonesty language, J.A. 257, 281, and that PATCO was aware that it was not purchasing faithful performance coverage. *See* J.A. 285–87.

Appellants contend that the words "fraudulent and dishonest acts" should be broadly read so as to include the actions of PATCO's officers in planning and executing the 1981 strike, which led to the firing of all striking PATCO members and the decertification and bankruptcy of PATCO. In support of that contention, appellants assert that PATCO's officers knowingly violated 5 U.S.C. § 7116(b)(7), which prohibits certain strikes by federal employees, disobeyed a court order directing the strikers to return to work, and caused union funds to be expended in support of an illegal action. Appellants also claim that some of the individual officers engaged in vote fraud in an effort to assure that enough PATCO members voted to authorize the strike.

## III.

■ An insurance policy, as a contract between the insurer and insured, *Anderson v. Group Hospitalization, Inc.*, 203 A.2d 421, 423 (D.C.1964), is to be construed to reflect "the understanding of the ordinary person, that is to say ... the meaning that common speech imparts." *American Ins. Co. v. Tutt,* 314 A.2d 481, 485 (D.C.1974). While there apparently is no decision by the District of Columbia Court of Appeals in which the meaning of the words "fraud" and "dishonesty" in the context of a fidelity bond is discussed, the ordinary meaning of the words "fraud" and "dishonesty" refers to acts which "show a breach of trust or of financial integrity, *coupled with* deceit and concealment exercised in a position of trust and confidence and causing finan-

---

**4.** However, it would appear that the earlier issued bond, 596–06–43–A, is the one in issue in this case.

cial loss." COUCH ON INSURANCE § 46:54 (2d ed. 1982) (emphasis added).[5] The actions of PATCO officials in appropriating funds for the 1981 strike, which was supported by most of the union membership, do not reflect a corrupt intent to deceive or to defraud the membership; nor do they reveal a breach of financial integrity, as would be the case if larceny, theft or embezzlement of PATCO funds was involved. Therefore, the bond does not protect PATCO against the kind of conduct of which appellants complain.

## IV.

■ The legislative history of the Labor–Management Reporting and Disclosure Act (LMRDA) demonstrates that § 502(a)'s bonding requirement covers only fraudulent or dishonest behavior relating to the handling of union funds. When LMRDA was first enacted in 1959, § 502(a) required that union officials be bonded for faithful discharge of duty. However, in 1965, Congress, by amendment, removed the faithful discharge of duty language and inserted language requiring a bond to protect against loss by "fraud or dishonesty." Both the House and Senate Reports relating to these amendments state:

> The question has been raised as to whether or not the proposed substitution would dilute the protections afforded to union funds, and whether or not the fraud or dishonesty bond would adequately cover the violations of section 501(a) of the act.
>
> Solicitor of Labor Charles Donahue [in a letter to the Chairman of the General Subcommittee on Labor] states that it is

and has been the position of the Department that *the bond required by section 502(a) need not cover all violations of section 501(a).* This position is expressed in an interpretative [sic] bulletin promulgated by then Secretary of Labor Mitchell shortly after the Labor–Management Reporting and Disclosure Act was enacted which states in part:

> "The bonding requirement in section 502(a) relates only to duties of the specified personnel in connection with their handling of funds or other property to which this section refers. It *does not have reference to the special duties imposed upon representatives of labor organizations by virtue of the position of trust which they occupy,* which are dealt with in section 501(a), and for which civil remedies for breach of the duties are provided in section 501(b). The fact that the bonding requirement is limited to personnel who handle funds or other property indicates the correctness of these conclusions. They find further support in the differences between sections 501(a) and 502(a) of the act which sufficiently indicate that the scope of the two sections is not coextensive."

The committee endorses the soundness of that interpretation.

H.REP. NO. 182, 89th Cong., 1st Sess. 4; S. Rep. No. 698, 89th Cong., 1st Sess. 4, *reprinted in* 1965 U.S.CODE CONG. & ADMIN. NEWS 3248, 3250–51 (emphasis added).[6]

The Department of Labor regulations interpreting 29 U.S.C. § 502 provide:

> The bonding requirement in section 502(a) relates only to duties of the speci-

---

5. Couch further defines " '[d]ishonesty,' in general terms, [as] 'a want of integrity in principle; a want of fairness and straightforwardness; a disposition to defraud, deceive, or betray; faithlessness, or a course of conduct generally characterized in the common speech of men as lacking in principle'." *Id.* (quoting *American Surety Co. v. Jay Lodge No. 87, F. & A.M.,* 102 Ind.App. 82, 196 N.E. 356 (1935)). *See also* 35 AM.JUR.2d *Fideltiy Bonds and Insurance* § 23 (1967) ("The words 'fraud' and 'dishonesty', in this connection, are deemed to include any act showing a want of integrity or a breach of trust, or an abstraction of funds, together with deceit and · concealment.") (footnote omitted).

6. The House and Senate Committee Reports contain the "supplemental views" of three members who conditioned their support for the amendment on the understanding that the new language reflected "a clarification, not a change, in the bonding requirements under the act." 1965 U.S.CODE CONG. & ADMIN.NEWS at 3254. Those "supplemental views" were not included in the body of the Committee Reports and were not adopted by the Committees. The Committee Reports indicate that a motivating factor behind the change was avoidance of the higher premiums charged for a bond which included the faithful discharge language. *Id.* at 3249.

fied personnel in connection with their handling of funds or other property to which this section refers. It does not have reference to the special duties imposed upon representatives of labor organizations by virtue of the positions of trust which they occupy, which are dealt with in section 501(a), and for which civil remedies for breach of the duties are provided in section 501(b).

29 C.F.R. § 453.11 (1986).

The regulations also discuss the meaning of "fraud or dishonesty" as follows:

> The term "fraud or dishonesty" shall be deemed to encompass all those risks of loss that might arise through dishonest or fraudulent acts in handling of funds.... As such, the bond must provide recovery for loss occasioned by such acts ... provided that within the law of the state in which the act is committed, a court would afford recovery under a bond providing protection against fraud or dishonesty. As usually applied under state laws, the term "fraud or dishonesty" encompasses such matters as larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, wrongful conversion, willful misapplication or any other fraudulent or dishonest acts resulting in financial loss.

29 C.F.R. § 453.12 (1986).

Appellants suggest that the words "abstraction," "misappropriation" and "misapplication" in the regulations are sufficiently broad to reach a union officer's expenditures of PATCO funds for the strike. However,

> the terms "wrongful abstraction" and "wilful misapplication" are [generally] used in association with such terms as "fraud," "dishonesty," "larceny" or "embezzlement". As a consequence, such terms have been deemed to supplement the other terms describing various types of corrupt conduct by employees, rather than to establish a new class of acts covered by the bond.

9A Appleman, INSURANCE LAW AND PRACTICE § 5670 (1981) (footnotes omitted). Appleman also notes that while

> [s]ome courts have intimated that any violation of duty or breach of instructions in the handling of the employer's funds or property would constitute a wrongful abstraction or misapplication, regardless of the employee's intent ... it is generally held that the employee's misappropriation or misapplication must be done with a dishonest or fraudulent intent
>
> . . . .

*Id.* (footnotes omitted).

In essence, appellants are seeking to equate the honesty bond which PATCO purchased from F & D with a faithful performance of duty bond. But in the light of the bond language and the legislative history of the LMRDA, appellants may not prevail pursuant to that approach. Accordingly, the judgment below is

*Affirmed.*