**UNITED STATES of America, on Behalf of its agency, the DEPARTMENT OF LABOR, Appellee,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Appellant.**

No. 97–5075.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 20, 1997.

Decided Dec. 23, 1997.

Richard A. Bunn argued the cause and filed the briefs for appellant.

John G. Interrante, Attorney, United States Department of Justice, Washington, DC, argued the cause for appellee, with whom Frank W. Hunger, Assistant Attorney General, Mary Lou Leary, United States Attorney, and J. Christopher Kohn, Attorney, United States Department of Justice, were on the brief.

Before: WALD, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Kaiser Steel Corporation ("Kaiser"), a coal mine operator, obtained a number of indemnity bonds in order to fulfill its self-insurance responsibilities under the Black Lung Benefits Act ("the Act"), 30 U.S.C. §§ 901–945 (1994), which imposes liability on mine operators for payment of benefits to miners who have developed pneumoconiosis ("black lung"). One of the bonds, issued in 1982 and

canceled in 1984, named Insurance Company of North America ("INA") as the surety. When Kaiser filed for bankruptcy in 1987, INA, as Kaiser's surety, was obligated to pay covered claims under the bond, a fact INA has never challenged. What has remained in dispute, however, is how to determine the claims for which INA is liable. In its first appearance before this court, *United States v. Insurance Co. of N. Am.,* 83 F.3d 1507 (D.C.Cir.1996) [hereinafter *INA I*] held that, according to the bond's language, INA was liable only for those claims that *accrued* during the bond period, rejecting the district court's conclusion that INA was liable for all claims *outstanding* during the bond period. The case now makes a return appearance, as INA claims that the district court on remand incorrectly interpreted our mandate by requiring that a miner's last year of employment with Kaiser—rather than his first year of employment—fall within the bond period in order for the claim to accrue during that period. We hold that our previous opinion did not address the issue of which year should be considered to mark the accrual point, so to the extent that the district court believed it was compelled by our opinion to choose a miner's last year of employment, it did so in error.[1] We therefore vacate its judgment and order and remand to the district court for it to decide, with additional evidence if necessary, the trigger year intended by the parties to the bond agreement.

### I. BACKGROUND

Under the Act, coal miners who have become totally disabled due to black lung that arises at least in part out of their coal mine employment and certain surviving dependents of miners whose death was due to black lung are entitled to monthly benefits. As of January 1, 1974, claims for benefits must be filed pursuant to the applicable state workers' compensation law if that law has been deemed by the Secretary of Labor to provide adequate coverage for black lung. 30 U.S.C. § 931 (1994); 20 C.F.R. § 722.101 (1997). Where no approved state workers'

---

1. Because our conclusion necessarily implies that INA's appeal was not frivolous, we deny the government's motion for sanctions.

compensation statute exists, claims are filed with the Secretary of Labor and are paid by responsible coal mine operators. 30 U.S.C. § 932(b) (1994); 20 C.F.R. § 725.1(d) (1997). An operator is considered a "responsible operator" under the Department of Labor's regulations if it is the operator "with which the miner had the most recent periods of cumulative employment of not less than 1 year." 20 C.F.R. § 725.493(a)(1) (1997). This regulation ensures that only one mine operator is responsible for the payment of a particular miner's benefits.[2]

The Act requires that each operator secure the payment of benefits for which it is liable in advance, either by qualifying as a self-insurer pursuant to 20 C.F.R. §§ 726.101 *et seq.* or by obtaining outside insurance. 30 U.S.C. § 933(a) (1994); 20 C.F.R. § 725.494 (1997). A mine operator that self-insures must acquire either an indemnity bond or negotiable securities in an amount sufficient to discharge its liability under the Act. 20 C.F.R. § 726.101 (1997). If a responsible operator or its surety does not make timely payments, or if no operator is liable for payment, benefits are paid from the Black Lung Disability Trust Fund ("the Fund"), which is financed by a tax on most types of coal and for which the Secretary of the Treasury, the Secretary of Labor, and the Secretary of Health and Human Services are trustees. 30 U.S.C. § 934 (1994); 26 U.S.C. § 9501 (1994); 20 C.F.R. § 725.1(g) (1997). A responsible operator is then liable to the federal government for repayment to the Fund of any expenditures attributable to that operator. 30 U.S.C. § 934; 20 C.F.R. § 725.603 (1997).

In 1973 the Department of Labor ("the Department") authorized Kaiser to act as a self-insured coal mine operator. To fulfill its obligations under section 726.101, Kaiser ob-

tained two indemnity bonds from INA, one in the amount of $684,750 (effective November 2, 1973) and one in the amount of $3,304,000 (effective May 1, 1982, and canceled on May 20, 1984) ("the 1982 bond"). Kaiser filed for bankruptcy in February 1987 and stopped paying benefits to its miners. In June 1987, the Secretary of Labor wrote to INA, requesting that INA, as Kaiser's surety, make arrangements for payment under the 1982 bond for claims filed from July 1, 1973, to May 20, 1984. Relying on the language of the bond, which defined INA's liability as that "which attaches to or is accrued by" Kaiser during the bond period, INA declined to pay all but two claims, asserting that the remainder of the claims accrued before 1982. The Department arranged for payment of the outstanding claims from the Fund and continued to request payment from INA. When its efforts proved unsuccessful, the Department filed suit in the district court on December 30, 1993.

Both parties moved for summary judgment as to the scope of INA's liability.[3] The district court entered judgment against INA on October 12, 1994, agreeing with the government that language in the bond that rendered INA liable for all of Kaiser's "present, past, and potential liability" under the Act created a broad scope of liability "for all Kaiser's obligations existing as of the effective date and continuing until the termination of the bond." *United States v. Insurance Co. of N. Am.*, 881 F.Supp. 1, 5 (D.D.C. 1994).[4] It therefore held INA liable for all past and future claims arising from employment with Kaiser on or before May 20, 1984, and subsequently directed the government to file a proposed judgment stating the amount for which INA would be liable.

---

2. To be precise, a finding that an operator is a "responsible operator" creates a rebuttable presumption that a miner's black lung arose out of his employment with that operator. The operator is therefore liable for payment of benefits to that miner unless it successfully rebuts that presumption. 20 C.F.R. § 725.493(a)(6) (1997).

3. INA also moved for summary judgment on the ground that the government's claim was barred by the statute of limitations in 28 U.S.C. § 2415(a) (1994). That assertion was rejected

both by the district court and by this court on appeal, *see INA I*, 83 F.3d at 1510–11, and thus is no longer an issue in this case.

4. The only coverage issue before the district court was the scope of the 1982 bond; although the second count of the government's complaint sought reimbursement under the 1973 bond, the government moved for, and was granted, summary judgment only as to the 1982 bond. 881 F.Supp. at 1 n. 1.

# 1040

On December 9, 1994, the government moved for leave to file, in support of its proposed judgment, a declaration by Scott D. Valentine ("Valentine"), a computer specialist with the Department who had reviewed the Department's records and calculated the amount due from INA. INA objected to the Valentine declaration, asserting that Valentine had not previously been identified as a witness and that the information upon which the declaration was based had not been disclosed during discovery. INA asked that its objections be sustained or, in the alternative, that it be granted 20 days in which to verify the accuracy of Valentine's calculations. The district court granted both the government's motion for leave to file the declaration and INA's request for review time on January 17, 1995, and on March 24, 1995, it entered judgment against INA in the amount of $659,871.80, plus interest, and ordered INA liable for payment of all future benefits arising from employment with Kaiser on or before May 20, 1984, capped by the penal sum of the bond.

INA appealed the district court's judgment, arguing that the district court had misinterpreted the bond language and thus incorrectly broadened the scope of its liability to include claims in existence before the bond period began.[5] We rejected the district court's interpretation, holding that because the parties intended that the bond impose on INA "only liability accruing after the bond's effective date," INA would be liable only for claims for which Kaiser became the "responsible operator" under 20 C.F.R. § 725.493 between May 1, 1982, and May 20, 1984, the date the bond was canceled, "by virtue of an employee's completion of one full year of employment with Kaiser during that period." *INA I*, 83 F.3d at 1512–13. We therefore reversed the district court's holding as to liability and remanded for reassessment of damages in accordance with our opinion.

On remand, the government moved for entry of judgment in the amount of $350,-

604.49, which represented the amounts due on claims related to three miners, each of whom had concluded his employment with Kaiser in 1983.[6] In support of this motion, the government submitted a new declaration from Valentine, which, like the first declaration, described how the amount due had been calculated; this amount included payments made from the Fund while the case had been on appeal. INA opposed the government's motion, arguing that the limitation in our opinion—the requirement of "an employee's completion of one full year of employment with Kaiser during [the bond] period"—restricted INA's liability to those claims filed by miners whose *first* year of employment with Kaiser was completed during the bond period, not the last year of employment, as the government contended. INA also renewed its objections to Valentine's declaration, asserting that it contained hearsay in its references to the Department's computer databases, that INA had not had the opportunity to depose Valentine, and that it contained inadmissible legal conclusions regarding INA's liability.

On January 22, 1997, the district court entered judgment in favor of the government in the amount of $350,604.49, plus interest, and ordered INA to pay any future benefits that became due to individuals whose last mining employment of at least one year was with Kaiser and ended during the bond period. It rejected INA's argument that its liability was determined by a miner's first year of employment as "contrary to the plain text of the regulations, counter to the Court of Appeals' decision, and entirely without merit," *United States v. Insurance Co. of N. Am.*, No. 93–2660, slip op. at 3–4 (D.D.C. Jan. 22, 1997), and declined to entertain INA's challenge to the Valentine declaration because INA had not raised the issue on appeal. INA now appeals a second time.

## II. ANALYSIS

Because both parties have framed the debate as one regarding the interpreta-

---

5. INA did not raise any challenge to the Valentine declaration on appeal, although the declaration was listed as a subject of appeal in INA's Statement of Issues to Be Raised.

6. The three claimants were Lucas S. Marez, whose last employment date was September 6, 1983; Arthur R. Mena, whose last employment date was January 14, 1983; and Ida Miller, widow of Leroy F. Miller, whose last employment date was June 24, 1983.

tion of our previous opinion, the primary question before us is whether that opinion dictated the conclusion reached by the district court. As we have previously noted, the "mandate rule," an application of the "law of the case" doctrine, states that a district court is bound by the mandate of a federal appellate court and generally may not reconsider issues decided on a previous appeal. *See, e.g., Maggard v. O'Connell,* 703 F.2d 1284, 1289 (D.C.Cir.1983); *City of Cleveland, Ohio v. Federal Power Comm'n,* 561 F.2d 344, 348 (D.C.Cir.1977). Unlike the doctrine of *res judicata,* however, the "law of the case" doctrine does not seek to sweep under its coverage all possible issues arising out of the facts of the case. *See City of Cleveland,* 561 F.2d at 348. Rather, the scope of the "law of the case" doctrine is limited to issues that were decided either explicitly or by necessary implication—"[t]he mere fact that [an issue] could have been decided is not sufficient to foreclose the issue on remand." *Maggard,* 703 F.2d at 1289. We therefore look to our previous opinion [7] to determine whether the district court unnecessarily restricted its ability to determine how INA's liability should be calculated.

At issue before us on the first appeal in this case was a narrow question regarding the scope of INA's liability: whether INA was liable for all claims *outstanding* during the bond period or only for those claims *arising* during the bond period. The government had claimed, and the district court had agreed, that the bond's "broad" language and references to "present, past, and potential liability" led to the conclusion that INA would be liable for any claim that was outstanding between 1982 and 1984, even if the condition that made INA liable for that claim—that Kaiser had become the "responsible operator"—had been fulfilled before the first day of the bond period. We disagreed, holding that such an interpretation would "virtually delete[ ]" the penultimate sentence of the second clause of the bond, which defined INA's liability as that "which attaches to or is accrued by [Kaiser] in or for the period during which this bond is in force."

*INA I,* 83 F.3d at 1511. Recalling the " 'cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other,' " *id.* (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995)), we concluded that the parties to the bond intended to impose on INA "only liability accruing after the bond's effective date," *id.* at 1512. Because liability under the Act is assigned only to the operator with which a miner was most recently employed for at least one year, *see* 20 C.F.R. § 725.493(a)(1), we held that INA was liable under the 1982 bond only for claims in which the miner had completed at least one year's employment with Kaiser during the bond period (between May 1, 1982, and May 20, 1984). *INA I,* 83 F.3d at 1513. Our holding was thus intended simply to narrow the broad scope of liability imposed by the district court and to require that there be a temporal connection between a claimant's employment with Kaiser and the bond period.

The district court on remand, however, read this holding more broadly, believing it not only to require such a temporal connection but also to define how that connection should be determined. The parties now before us commit the same error, each contending that our opinion dictates the year of employment that fulfills the one-year requirement and each mustering various regulatory language and policy rationales in its favor. But these arguments are misdirected: As we have noted above, a careful reading of the opinion reveals that the issue was not decided, nor was any resolution necessarily implied by our holding. Simply put, we did not decide which year of employment the parties to the bond intended to trigger INA's liability.

 If the answer to this question were clear from the language of the bond, it would be incumbent upon us to decide it on this appeal. The indemnity bond at issue in this

---

**7.** As we have previously noted, it is entirely appropriate—and, in most cases in this circuit, necessary—to consult the opinion to interpret the mandate. *See, e.g., City of Cleveland,* 561 F.2d at 347 n. 25.

case is a contract between the principal (here, Kaiser) and the surety (INA) in favor of an obligee (the U.S. government); as with any contract, if its terms are unambiguous on their face, interpretation is considered a question of law appropriately resolved by this court. *See, e.g., NRM Corp. v. Hercules, Inc.,* 758 F.2d 676, 682 (D.C.Cir.1985).[8] Where, however, a contract provision is ambiguous, extrinsic evidence may be necessary to ascertain the mutual intent of the parties and thus resolve the ambiguity, and its admission is within the province of the district court. *See, e.g., America First Inv. Corp. v. Goland,* 925 F.2d 1518, 1522 (D.C.Cir.1991).

We thus return to the bond provision we examined in the first appeal to determine if there is an unambiguous reference to the year of employment that should serve as the trigger of liability, keeping in mind that a contract provision is ambiguous "if it is reasonably susceptible of different constructions, but it is not ambiguous merely because the parties later disagree on its meaning." *Bennett Enters., Inc. v. Domino's Pizza, Inc.,* 45 F.3d 493, 497 (D.C.Cir.1995) (citation omitted). The only portion of the bond which could be said to define the trigger of liability is the last sentence of the second clause, which reads: "For purposes of this clause liability shall be construed to attach or be accrued by the Principal for such periods and in such manner as is determined by the Secretary of Labor pursuant to said Act of 1969 and the applicable regulations duly promulgated thereunder." Joint Appendix ("J.A.") 12. Thus, we can conclude, at a minimum, that the parties unambiguously intended that the trigger for Kaiser's—and thus INA's—liability would be determined either by the Act itself or by regulation.[9]

When a contract incorporates a regulation by reference, that regulation becomes a part of the contract for the indicated purposes as if the words of that regulation were set out in full in the contract. *See, e.g., Washington Metro. Area Transit Auth. v. Mergentime Corp.,* 626 F.2d 959, 962 n. 3 (D.C.Cir.1980); *Maryland National Capital Park & Planning Comm'n v. Lynn,* 514 F.2d 829, 833 (D.C.Cir.1975). Therefore, the bond's reference to "applicable regulations" as the standard that determines when liability attaches necessarily incorporates 20 C.F.R. § 725.493(a)(1), the regulation that defines when an operator becomes a "responsible operator" and thus becomes liable for paying miners' claims.[10] If we then read the bond as if the language of section 725.493(a)(1) were included in full, it becomes apparent that the bond is ambiguous as to when liability is deemed to accrue—the re-

8. Subject matter jurisdiction in this case was obtained under, *inter alia,* 28 U.S.C. § 1352 (1994), which mandates original jurisdiction in the district courts, concurrent with state courts, "of any action on a bond executed under any law of the United States, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title." Because "[t]here is no federal legislative standard for bonds 'executed under any law of the United States,'" *Skirlick v. Fidelity & Deposit Co. of Md.,* 852 F.2d 1376, 1377 (D.C.Cir.1988) (internal quotation marks omitted), state law provides the applicable rules of contract interpretation and construction. The record before us does not indicate where the bond was executed, although the bond itself reflects that Kaiser is located in California and that INA is incorporated in Pennsylvania. Because both these jurisdictions—as well as the District of Columbia—hold that unambiguous contract provisions are enforced according to their terms, *compare Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234, 1235 (1994) *with AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253, 1264 (1990) *and Skirlick,* 852 F.2d at 1378, we need not decide which state's law would apply in this case.

9. We are mindful of the fact that the bond states that liability attaches *"as is determined by the Secretary of Labor* pursuant to said Act of 1969 and the applicable regulations duly promulgated thereunder," J.A. 12 (emphasis added), language that could support an interpretation that discretion to determine liability is wholly vested with the Secretary of Labor. Nevertheless, we are confident, given that the bond refers to a determination "pursuant to" the Act and the regulations, that the parties did not intend that the Secretary's discretion would be unfettered. Except for rejecting an interpretation vesting total discretion in the Secretary, we take no position on the circumstances, if any, under which a Departmental interpretation of the regulations would be entitled to deference.

10. The current version of 20 C.F.R. § 725.493 was promulgated on August 18, 1978, and so was in existence when the bond at issue in this case went into effect. *See* 43 Fed.Reg. 36,771, 36,804 (1978).

quirement that Kaiser be the operator "with which the miner had the most recent periods of cumulative employment of not less than 1 year" admits of either reading the parties urge upon us on appeal. As INA argues, the language could be interpreted to impose liability after a miner's first year of employment with Kaiser: If Kaiser is that miner's most recent employer, liability is triggered as soon as one year of employment has been completed. But, as the government argues, the language could just as easily refer to a miner's last year of employment with Kaiser, given that the regulation's focus is on the employment most recent in time. Given this ambiguity, it would be inappropriate for us to determine the intention of the parties on the basis of the record as it now stands.[11] We therefore remand this case once again to the district court to determine, with the admission of extrinsic evidence, if necessary, whether the parties to the bond intended that the first year of employment or the last year of employment be the trigger of liability and to reassess damages in accordance with that determination.

 Our decision to remand once again is entirely consistent with our action in the first appeal, in which we resolved the interpretation issue before us at that time. There, the provisions we were required to reconcile—the reference to "present, past, and potential liability" and the reference to liability as that which "attaches to or is accrued by" Kaiser during the bond period—were each unambiguous on their face with respect to the conflicting claims then presented. Our task,

appropriately undertaken under the rules of contract interpretation, was to harmonize these provisions into a consistent whole. Here, by contrast, we are faced with a single provision, the meaning of which cannot be unlocked with the interpretive keys we, as an appellate court, possess. It would be appropriate for us to resolve this ambiguity only if "the proper resolution was so obvious on the basis of the record that a remand on that issue would [be] 'unduly wasteful of judicial resources.'" *Maggard*, 703 F.2d at 1290 (quoting *Independent Bankers Ass'n of Am. v. Heimann*, 613 F.2d 1164, 1167 (D.C.Cir. 1979)). Given the absence of evidence in the bond itself and in the record concerning the proper interpretation of the bond's liability provision, the solution here can hardly be said to be that obvious.

### III. CONCLUSION

We vacate the district court's judgment and order and remand to allow the district court to determine the parties' intent with respect to the year of employment that triggers Kaiser's—and therefore INA's—liability for claims under the Act.[12]

*It is so ordered.*

---

11. The canon of construction known as *contra proferentum*—that ambiguities in an insurance contract should be construed against the insurer who drafted the contract, *see, e.g., Revere Copper & Brass, Inc. v. Overseas Private Inv. Corp.*, 628 F.2d 81, 82 (D.C.Cir.1980)—is not a sufficient ground by itself for rejecting the government's interpretation of the bond language. First, while it is true that the 1982 bond is merely the government's Form CM–922, which bears the heading "U.S. Department of Labor," the government is neither Kaiser's insurer nor a signatory to the bond; at most, it is a third-party obligee entitled to enforce the agreement between Kaiser and INA. Second, and more important, *contra proferentum* is traditionally used only in "cases of doubt ... [where] other factors are not decisive." RESTATEMENT (SECOND) OF CONTRACTS § 206 cmt. a (1979). Only after the district court has had the opportunity to consider the parties' intent in the

first instance, therefore, would resort to this canon be appropriate.

12. Because the district court on remand is permitted to admit extrinsic evidence to aid it in resolving the bond's ambiguity, INA should be permitted to challenge the new Valentine declaration submitted by the government in support of its claim. Although we stated in *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C.Cir.1995), that, pursuant to the "law of the case" doctrine and its subsidiary waiver principle, "appellate courts are precluded from revisiting not just prior or *appellate* decisions but also those prior rulings of the *trial* court that could have been but were not challenged on an earlier appeal," *id.* at 739 (emphases in original), we also noted that the doctrine "is a prudential rule rather than a jurisdictional one," motivated by a "practical con-

cern for judicial economy," *id.* at 739–40. Given that the second Valentine declaration involves a new set of calculations—and, depending on the district court's resolution of the bond's ambigui-ty, there may yet be a third declaration—and given that the district court will likely be presented with additional evidence on remand, we find no reason to bar INA's challenge.