**The AMERICAN INSURANCE COMPANY,**
**Appellant,**

**v.**

**Homer O. TUTT, Jr., Appellee.**

**No. 7158.**

District of Columbia Court of Appeals.

Argued Sept. 26, 1973.

Decided Jan. 18, 1974.

As Modified Feb. 14, 1974.

Leo A. Roth, Jr., Washington, D. C., with whom Denver H. Graham, Washington, D. C., was on the brief, for appellant.

Robert Cadeaux, Washington, D. C., with whom Edward Jasen, Washington, D. C., was on the brief, for appellee.

Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

In this appeal the appellant (hereinafter the "company") seeks relief from a decision by the trial court denying its motion for summary judgment in its action seeking a declaratory judgment that it was not obligated to pay appellee anything under the terms of the uninsured motorist coverage in his automobile insurance policy. The trial court granted summary judgment to appellee (hereinafter the "insured"), holding, in effect, that he was entitled to recover. We affirm.

On or about December 12, 1968, the insured paid a premium to the company on a comprehensive automobile insurance policy. In return for a part of that premium the company promised "[t]o pay *all sums* [$15,000 policy limit] which the insured . . . shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile . . . ." (Emphasis added.)

On June 5, 1969, the insured was involved in an accident while operating a police motorcycle in the course of his employment in Washington, D. C. As a result of that accident the insured sued the other party to the accident (hereinafter the "tortfeasor"). That action resulted in a decision that the insured was "legally entitled to recover as damages" $57,350.00 from the tortfeasor. That judgment was not satisfied and it developed that the tortfeasor was "uninsured".

Due to the fact that the insured sustained his injuries in the course of his employment, he was awarded benefits by the District of Columbia Policemen and Firemen's Retirement and Disability [Fund], D.C.Code 1973, § 4–501 et seq.

The parties stipulated that the benefits received by the insured were "in excess of $15,000". They have not set forth the exact total value of those benefits. However, they did agree that "[t]he Defendant did not receive any compensation for pain and suffering pursuant to said act". Consequently, the item, in the judgment he obtained for damages of $25,000, for pain and suffering [1] remains unsatisfied, unless

the proceeds from the uninsured motorist policy are to be applied to it.

The insured filed a claim with the company pursuant to his insurance policy. The company denied liability contending that the "Limits of Liability" clause, Condition 4(b)(2), required that its liability ($15,000) be reduced by the amount of benefits the insured *realized from* workmen's compensation or any similar law. The company then filed this action for a declaratory judgment in the Superior Court asking that the rights of the parties to the insurance contract be adjudged.

The various types of coverage in the contract are set forth in "Parts". (Part I —Liability; Part II—Expenses for Medical Services; Part III—Physical Damage; and Part IV—Protection Against Uninsured Motorists.) [2] Each "Part" specifies the coverage which it affords and the exclusions therefrom. Additionally, there are "Conditions", which further limit and modify the coverage as set forth in the various "Parts". Some of these "Conditions" apply to all "Parts" and some apply only to specified "Parts".

Condition number 4 [3] is broken down into sections which bear the Part numbers

---

1. In the insured's action against the tortfeasor the court found that he suffered the following damages:

| | |
|---|---|
| Washington Hospital Center | $ 2,100.00 |
| Dr. Barrett Goldstein | 750.00 |
| Future Medical Expenses | 3,500.00 |
| Loss of income to date of trial | 10,000.00 |
| Future loss of income | 16,000.00 |
| Pain and suffering | 25,000.00 |
| Total | $ 57,350.00 |

Judgment was entered for the total amount.

2. This coverage provides:

PART IV—PROTECTION AGAINST UNINSURED MOTORISTS

Coverage G—Uninsured Motorists (Damages for Bodily Injury). *To pay all sums* which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such unin-

sured automobile . . . . (Emphasis added.)

3. CONDITIONS

. . . . .

4. Limits of Liability

. . . . .

PART IV. (a) The limit of liability for uninsured motorists coverage stated in the declarations [$15,000] as applicable to "each person" is the limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and subject to the above provision respecting each person, the limit of liability stated in the declarations as applicable to "each accident" is the total limit of the Company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident.

(b) *Any amount payable* under the terms of this *Part* because of bodily injury sustained in an accident by a person who is

to which they apply, *i. e.*, Condition 4 Part I is a condition which applies to Part I coverage. Likewise Condition 4 Part IV is a *condition* which applies to Part IV coverage.[4]

The company claims that the "Limits of Liability" clause, Condition 4(b)(2), requires that its liability under the face value of the policy be reduced by the amount of benefits (at least $15,000) the insured received from the District of Columbia if they were in the nature of workmen's compensation or disability law benefits. The insured contends that even if the benefits[5] he received from the District of Columbia were in the nature of workmen's compensation within the meaning of Condition 4(b)(2), those benefits should be applied to the total damages he suffered at the hands of the uninsured motorist rather than being set off against the face amount of his policy.

The following illustrates the two conflicting positions.

*Insured's Position:*

| | |
|---|---|
| Insured's total damages | $ 57,350.00 |
| Workmen's compensation received | −15,000.00 |
| Uncompensated damages | 42,350.00 |
| Uninsured motorist insurance | $ 15,000.00 |

*Company's Position:*

| | |
|---|---|
| Insured's total damages | $ 57,350.00 |
| Uninsured motorist insurance | $ 15,000.00 |
| Workmen's compensation received | −15,000.00 |
| Amount insurance company is obligated to pay | 0.00 |

■ The question is whether the words "any amount payable" at the beginning of Condition 4(b) (representing the figure which is to be reduced by the amount of workmen's compensation received) refer to the company's liability limit ($15,000) as set forth in Condition 4(a) (see the "Com-

an insured under this Part *shall be reduced by*

.    .    .    .    .

(2) the amount paid and the present value of *all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law*. . . . (Emphasis added.)

4. For ease of reference and to avoid confusing Condition 4 Part IV (a *condition* which

pany's Position", *supra*) or whether they refer to the company's promise "to pay all sums" etc. in Part IV, Coverage G "which the insured . . . is legally entitled to recover".

It seems significant to us that Condition 4(a) does not read in terms of an "amount payable" but, similar to 4(b), only purports to deal with limitations on the company's liability under the policy. The nature of the uninsured motorist coverage provided by the company and its obligation "to pay" is to be found in schedule G.

It seems clear, therefore, that the $15,000 in payments received by the insured from the District of Columbia workmen's compensation fund should be used to reduce the amount represented by the company's promise "[t]o pay all sums which the insured . . . shall be legally entitled to recover as damages from the owner" per Part IV, Coverage G. *See* note 2, *supra*.

■ It is the duty of the insurer "to spell out in plainest terms—terms understandable to the man in the street—any exclusionary or delimiting policy provisions . . . ." Raley v. Life & Casualty Insurance Co., D.C.Mun.App., 117 A.2d 110, 113 (1955), quoted with approval in Holt v. George Washington Life Insurance Co., D.C.Mun.App., 123 A.2d 619, 621 (1956). That is, they shall use "language which unambiguously conveys such an intent to the mind of an ordinary layman. Failing such unambiguous language, doubt should be resolved in favor of the insured." Buchanan v. Massachusetts Protective Association, 96 U.S.App.D.C. 144, 146, 223 F.2d 609, 611, cert. denied, 350 U.S. 833, 76 S.Ct. 67, 100

modifies Part IV coverage) with Part IV (the actual coverage provision), Condition 4 Part IV is referred to simply as Condition 4. No other Conditions are referred to.

5. The insured denies that the benefits he received from the District of Columbia were in the nature of workmen's compensation or were paid under a disability benefits law.

L.Ed. 743 (1955); Holt v. George Washington Life Insurance Co., *supra*. Upon examining the language used in the pertinent portion of the policy, we cannot agree that the language meets the foregoing standard.

█ It is well established that in construing contracts of insurance the standard to be used is the understanding of the ordinary person, that is to say they will be given the meaning that common speech imparts. Belland v. American Automobile Ins. Co., D.C.Mun.App., 101 A.2d 517 (1953); Stinson v. New York Life Ins. Co., 83 U.S.App.D.C. 115, 167 F.2d 233 (1948).

Our reading of the pertinent policy provisions convinces us that the "Company's Position" is untenable and that any ordinary person would understand the language in question to obligate the company to pay the insured the full amount of his damages, less the amount received, if any, as remuneration for that type of loss from workmen's compensation, such amount not to exceed the face amount of the policy, $15,000, (as illustrated in the "Insured's Position", *supra*).

We hold that the ordinary meaning of the language employed in Condition 4(b)(2) operates to deduct amounts payable "under any workmen's compensation law [or] disability benefits law" from the "all sums which the insured or his legal representative shall be legally entitled to recover as damages"; that is, from the insured's total damages rather than from the face value of the policy.

Since we have held thusly, it becomes unnecessary to decide whether the benefits received by the insured are within Condition 4(b)(2), (that is, whether they are in the nature of workmen's compensation or disability law benefits), since even if they are, the insured still has at least $25,000 in uncompensated damages, towards which the face value of his insurance policy must be applied.

Policy language substantially identical to this was so interpreted in Michigan Mutual Liability Co. v. Mesner, 2 Mich.App. 350, 139 N.W.2d 913 (1966).[6]

The Michigan court analyzed the policy as follows:

> Sub-section (a) limits the liability for uninsured motorists' coverage as stated on the front of the policy to $10,000. Sub-section [(b)],[7] which stands on equal footing with (a), and is not subordinate . . . reduces any loss payable by the amount of the workmen's compensation paid or payable.

> Therefore, it is our opinion that [(b)] modifies [G] and does not modify (a) . . . . [139 N.W.2d at 915–916.]

We believe this interpretation to be the one most reasonably drawn from the policy language itself and note that it is considered by commentators to be the better one since it is consistent with the principle of indemnity, *i.e.*, the insurance protection purchased will be collectible up to the insured's loss but without the possibility of double recovery.[8]

█ The purpose of uninsured motorist coverage is to place the injured party in the same position he would have been in had the tortfeasor carried his own liability insurance. This, no doubt, is what this in-

---

6. *Contra*, is an earlier case, (appearing to be the first reported case on the question) Jarrett v. Allstate Ins. Co., 209 Cal.App.2d 804, 26 Cal.Rptr. 231 (1962), the reasoning of which was specifically rejected by the Michigan court.

7. The letters designating subparagraphs have been changed to those used in the instant policy.

8. Widiss, A Guide to Uninsured Motorist Coverage § 2.65, at 122 (1969); Widiss, Perspectives on Uninsured Motorist Coverage, 62 Nw.U.L.Rev. 497, 520–21 (1967); 26 Ark.L.Rev. 570, 579 (1973); Comment, The Uninsured Motorist Endorsement—Some Problems of Construction, 42 Tul.L.Rev. 352, 370 (1968).

sured reasonably believed he was buying when he entered into a contract for such coverage and paid a separate premium therefor.

In considering the insurance company's contention that its interpretation of the policy is the most reasonable one, we must in light of Holt v. George Washington Life Insurance Co., *supra,* conclude that the insurance company's proposed interpretation of the policy creates, at best, an ambiguity in the policy, an ambiguity which for the reasons we have indicated above, we are compelled to resolve in favor of the insured.

Affirmed.