Randal L. VAUGHAN, et al., Appellants,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.

Nos. 95–CV–227, 95–CV–984.

District of Columbia Court of Appeals.

Argued May 22, 1997.
Decided Oct. 16, 1997.
As Amended on Grant of Rehearing
Dec. 18, 1997.

Frederic W. Schwartz, Jr., with whom James W. Taglieri was on the brief, Washington, DC, for appellants.

Alfred F. Belcuore, Washington, DC, for appellee.

* Former Associate Judge Ferren was a member of the division that heard oral argument in this case. After his departure from the court, Associate Judge Reid was selected by lot to replace him.

** Sitting by designation pursuant to D.C.CODE ANN. § 11–707(a)(1995 Repl.).

Before SCHWELB and REID,* Associate Judges, and LEVIE, Associate Judge of the Superior Court of the District of Columbia.**

LEVIE, Associate Judge:

Appellants present this Court with four issues arising from two separate orders that are the subject of these two consolidated appeals. For the reasons set forth below, we affirm both orders. The basic facts underlying these orders are undisputed.

Appellant Randal Vaughan, a District of Columbia police officer, was injured while on duty in the District when an uninsured motorist hit the motor scooter he was driving. Mr. Vaughan and his wife, both residents of Maryland, brought suit in the Superior Court of the District of Columbia against four individual defendants for negligence.[1] They also sued their own insurance carrier, Appellee Nationwide Mutual Insurance Company (hereinafter "Nationwide"),[2] alleging that Nationwide owed them compensation pursuant to their uninsured motorist protection coverage because the persons responsible for the accident (the individual defendants) were uninsured motorists.

The first appeal involves the grant of partial summary judgment to Nationwide limiting the Vaughans' potential recovery from Nationwide. Applying Maryland law and the recovery limitations set forth in the Vaughans' insurance contract, the court (Wynn, J.) ordered that "maximum amount Plaintiff may recover in this action be reduced to $100,000 less any amount *paid or payable* through the District of Columbia Police and Firefighters Retirement and Disability Act." (Emphasis in original.) Judge Wynn's Order rested, in part, upon the Maryland statutory provisions which provide that uninsured motorist coverage is to be reduced "to the extent that the recipient has recovered benefits under workers' compensation laws of any state or the federal govern-

1. Appellants obtained defaults against three of the four defendants; the fourth defendant was voluntarily dismissed by Appellants. None of these defendants is a party to this appeal.

2. Ms. Vaughan's claim was for loss of consortium.

ment." MD.CODE ANN. art. 48A § 543(d) (1994 Repl.). The court's Order also rested upon the language of the Vaughans' insurance contract, which contains a $100,000 limit for bodily injury and specifies that amounts payable under uninsured motorist coverage be reduced by "any sums paid or payable under any workmen's compensation, disability benefits, or similar laws."

This matter went to trial before Judge Milliken against Nationwide as the sole remaining defendant; Mr. Vaughan received a jury verdict of $150,000 in compensatory damages and Ms. Vaughan received $50,000 for loss of consortium. Judgment for Mr. Vaughan in the amount of $150,000 and for Ms. Vaughan in the amount of $50,000 was docketed on February 16, 1995 and mailed the next day.[3]

On February 13, 1995, Nationwide sent Appellants' counsel a check for $74,546.71. This amount reflected the $100,000 limit set by Judge Wynn, less the amount paid to Mr. Vaughan pursuant to the District of Columbia Police and Firefighters Retirement and Disability Act (hereinafter "Disability Act"). D.C.CODE ANN. § 4–601 *et seq.* (1994 Repl.). The Vaughans' counsel refused to accept the check, explaining in a letter to Nationwide's counsel the Vaughans' intent to appeal Judge Wynn's Order, as they believed they were entitled to a total of $150,000.[4]

In May, 1995, despite the fact that the Vaughans had noted their appeal, and unbeknownst to Nationwide, the Vaughans attached Nationwide's bank account for $200,-000, the full amount of the judgment. On May 17, 1995 Nationwide, pursuant to D.C.Super. Ct. Civ. R. 60(b), filed a motion to alter or amend the judgment and to quash the attachment. On June 29, 1995 Judge Milliken issued an Order finding that Judge Wynn's Order controlled the matter and did

not affect or alter the $200,000 judgment; he concluded that Nationwide was obligated to pay $74,576.71. Judge Milliken also ordered that the attachment against Nationwide's bank account be quashed. This Order is the subject of the second appeal.

## I. Order Granting Partial Summary Judgment

### A. Choice of Law

The Vaughans claim the trial court erred in granting summary judgment to Nationwide.[5] The Vaughans argue that Judge Wynn erred by applying Maryland law, which clearly sets forth a required deduction for workers compensation from uninsured motorist benefits. Had Judge Wynn applied District of Columbia law, the Vaughans argue, the payments made pursuant to the Disability Act would not be deducted, as there is no specific statutory authority to do so.[6] The Vaughans claim that the express omission of uninsured motorist payments under the No–Fault Act indicates a legislative intent that those payments shall not be reduced. They argue further that the language of the Nationwide insurance policy may not supersede a statutory directive or the legislative intent of the District of Columbia No–Fault Act.

■ Choice of law is reviewed by this court on a *de novo* basis. *Hercules & Co. v. Shama Restaurant Corp.*, 566 A.2d 31, 40 (D.C.1989). In determining choice of law we are guided by two applicable sections of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971), which direct us to examine the language of the policy and the intent of the parties. Section 187 states:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue

---

3. The verdict was rendered on February 9, 1995.

4. Specifically, counsel for the Vaughans stated, "[u]nder the policy language, we believe that we are entitled to $100,000.00 for Randal Vaughan and $50,000.00 for Teresa Vaughan."

5. Summary judgment is appropriate when there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Colbert v. Georgetown Univ.*, 641 A.2d

469, 472 (D.C.1994) (en banc). *See also* D.C.Super. Ct. Civ. R. 56.

6. District of Columbia law allows reductions to personal injury payments for amounts received by workers compensation and other benefits, but does not provide specifically that uninsured motorist payments be reduced upon payment of such benefits. *See* D.C.CODE ANN. § 35–2110(b) (1997 Repl.).

is one which the parties could have resolved by an explicit provision in the agreement directed to that issue.

Section 193 is also relevant to the facts of this case. This section provides:

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

■ The Vaughans' policy contains the following provision: "[a]ny terms of this policy which may be in conflict with statutes of the state in which the policy is issued are hereby amended to conform." The effect of such language, which applies to all provisions of the policy, is to ensure that the contract will be altered to comply with the law of the state in which the policy was issued. There is no provision in the policy stating that the contract will be altered to conform with the law of the forum where an accident giving rise to coverage occurs.

The policy language noted above supports the conclusion that the parties intended that the contract (policy) be controlled by the law of the state where the policy was issued—Maryland. Indeed, to conclude otherwise would render the language of that provision meaningless. *See 1010 Potomac Assoc. v. Grocery Mfrs. of Am.*, 485 A.2d 199, 205 (D.C.1984) ("The [contract] must be interpreted as a whole, giving a reasonable, lawful and *effective* meaning to all its terms.") (emphasis added). Such a conclusion is supported by § 187 of the Restatement.

■ Viewing the language of the Vaughan policy regarding conformance as the functional equivalent of the parties' intention that contractual disputes be governed by the law of Maryland, we find further support for the application of Maryland law in the language of § 193, which provides that the law of the state where the insured vehicle is located

controls. The Official Comment to § 193 is informative as to the rationale for this rule. Comment c provides, *inter alia:*

A number of reasons serve to explain why such importance is attached to the principal location of the insured risk. This location has an intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend. So the cost of automobile liability or of collision insurance will probably be higher if the place where the automobile will be principally garaged during the term of the policy is an urban, as opposed to a rural, community.... For these and other reasons, the location of the risk is a matter of intense concern to the parties to the insurance contract. And it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of the state where the risk is to be principally located would be applied to determine many of the issues arising under the contract. Likewise, the state where the insured risk will be principally located during the term of the policy has a natural interest in the determination of issues arising under the insurance contract.

*See also Lewis v. American Family Ins. Group*, 555 S.W.2d 579 (Ky.1977), *Travelers Indem. Co. v. Stearns*, 116 N.H. 285, 358 A.2d 402 (1976).

In the case of an automobile liability policy, as here, the focus is on the location of the automobile insured, whose primary location is known to the parties at the time of entering into the contract. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 cmt. b (1971). By looking to Maryland as the state where the Vaughans' vehicle was located during the time of the existence of the policy at issue, Judge Wynn acted in conformity with § 193.

In a similar situation, the United States Court of Appeals for the District of Columbia Circuit stated:

[w]ith respect to the interpretation of an automobile liability policy, the District adopts the "law of the state which the parties understood was to be the principal

location of the insured risk [the auto] during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties, in which event the local law of the other state will be applied."

*Gray v. Grain Dealers Mut. Ins. Co.*, 276 U.S.App. D.C. 388, 390, 871 F.2d 1128, 1130 (1989) (citing *National Union Fire Ins. Co. v. Binker*, 665 F.Supp. 35, 40 (D.D.C.1987) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 (1971))).

Application of Sections 187 and 193 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS brings an important element of predictability to this entire area of automobile insurance. As the court in *Jepson v. General Cas. Co. of Wis.*, 513 N.W.2d 467, 470 (Minn.1994) stated:

> Predictability of result as it relates to the tort aspect of a case is not of great importance in situations such as the one presented here because of the unplanned nature of automobile accidents.... Predictability of results is of value in analyzing the contract aspects of a case. While where an accident occurs is unimportant, the obligations the insurer has to the insured at that time are important. The heart of the bargain between the insurer and the insured is the coverage the insured purchased. The parties enter into the insurance contract with the expectation that, should a dispute arise, the legal system will endeavor to give each side the benefit of their bargain, it enhances the predictability of the parties' contractual arrangements.

Even beyond the Restatement, general application of the District's choice of laws rules would dictate the upholding of Judge Wynn's Order. Generally, in determining choice of law the District of Columbia employs a governmental interest analysis. *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995). Under this analysis,

we first look at each jurisdiction's policy to see what interests the policy is meant to protect, and then consider which jurisdiction's policy would be most advanced by applying the law of that jurisdiction. Part of the test of determining the jurisdiction whose policy would be most advanced is determining which jurisdiction has the most significant relationship to the dispute. *Id.* (citing *Hercules*, 566 A.2d at 41 n. 18). Applying the District of Columbia choice of law analysis, we conclude that Maryland's interest outweighs the District's.

The Vaughans are citizens of Maryland and obtained the insurance policy in Maryland. Moreover, insurance rates generally are adjusted according to the primary location of the insured property. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193 cmt. c (1971). In this case the location of the insured vehicle was Maryland, which also was the residence and domicile of the Vaughans and the place where the policy was issued.

The Vaughans argue that Maryland's interest is limited to assuring that its own residents are protected in accidents in Maryland; they go on to assert that Maryland thus has no interest in accidents occurring in the District. This view is too narrow. The Vaughans' argument overlooks the fact that Maryland has an interest in protecting the expectations of Maryland residents who are parties to a contract. *See, e.g., Hercules*, 566 A.2d at 41.

■ The District's only connections to the incident are the fortuity that the accident occurred in the District of Columbia and that Mr. Vaughan was employed and working as a police officer in the District when the accident occurred.[7] The location of fortuitous events, such as automobile accidents, generally is not considered a persuasive factor in choice of law analysis in situations of economic loss rather than personal injury. *See Moore v. Ronald Hsu Construction Co., Inc.*, 576 A.2d 734, 737–38 (D.C.1990); *Rong Yao*

---

7. The Vaughans rely upon *Kaiser–Georgetown Community Health Plan, Inc. v. Stutsman*, 491 A.2d 502 (D.C.1985). *Stutsman*, however, is distinguishable. In *Stutsman*, a negligence case, the Court applied District law to a medical mal-

practice case where the plaintiff was a Virginia resident who received medical services in Virginia and where both defendants to the action were District corporations.

*Zhou v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268, 1270 (D.C.1987); *Stutsman*, 491 A.2d at 508. *See also Hercules*, 566 A.2d at 42 (citing RESTATEMENT OF CONFLICT OF LAWS § 145, cmt. f (1971)) ("In cases of economic loss, however, the place of injury does not play as important a role for choice of law purposes as it does where personal injury is alleged.").[8]

■ Maryland, through its legislation, affirmatively has stated an interest that workers' compensation and other benefits be deducted from uninsured motorist payments.[9] Moreover, Maryland's interest described above in honoring contracts entered into by its residents and within its borders will surely be advanced by the application of Maryland law.

No provision of the insurance contract violates any express policy of the District of Columbia or the State of Maryland. The contract meets the public policy concerns of the District of Columbia in that it provided more than the minimum protection required in the District's No–Fault Act. *See Millender v. Nationwide Ins. Co.*, 119 Daily Wash. L. Rptr.1953 (D.C.Super.Ct. Sept. 12, 1991) (von Kann, J.).[10] Indeed, Mr. Vaughan carried an amount of uninsured motorist coverage higher than the District's statutory minimum.[11]

Aside from Mr. Vaughan maintaining uninsured motorist coverage, the District's other interest was insuring that Mr. Vaughan was compensated pursuant to the Disability Act. This interest also was satisfied. Accordingly, the District does not have a "more significant relationship" to the transaction which would allow it to fall within the caveat set out in Restatement § 193.[12]

## B. Limitation of Damages

■ The Vaughans' second issue with respect to Judge Wynn's Order addresses the appropriate limitation of damages under the

8. The Vaughans' argument that the insurance contract followed them wherever they traveled is not persuasive. To adopt their view would result in uncertainty in the performance of the contract, as any state's law could potentially alter the contract merely because the insured drives through it.

9. Appellants argue in their brief:

Nationwide hypothesizes, without record support, that the Maryland Legislature enacted its statutory provision to insure that uninsured motorist insurance would be available at "reasonable" rates to its citizens. It is equally likely—and equally without record support—that the statutory provision resulted from the efforts or [sic] an insurance industry lobbyist over dinner with a legislator in Annapolis. In any event, there is no indication in the record that the Maryland uninsured motorist insurance rate would increase as a result of claims being paid to Maryland residents who are District of Columbia police officers or firefighters and who are injured by uninsured motorists in accidents occurring in the District of Columbia.

The Court agrees with appellants that assumptions as to the intent of legislators are unwise. Regardless of whether the true legislative intent was the protection of the citizens of the state of Maryland or not, appellants cannot deny that Maryland explicitly has spoken on the issue, while the District of Columbia has not. The very fact that Maryland legislators expressly addressed the issue demonstrates a state interest. *See Bledsoe v. Crowley*, 270 U.S.App. D.C. 308, 310–11, 849 F.2d 639, 641–42 (1988).

10. According to the Council of the District of Columbia, the purpose of the Compulsory/No–Fault Motor Vehicle Insurance Act is "to provide adequate protection for victims who are injured in the District or who are injured while riding in motor vehicles registered or operated in the District." D.C.CODE ANN. § 35–2101(b) (1997 Repl.). To do so, the Council of the District of Columbia established that any insurer providing insurance in the District shall include coverage for uninsured motorist protection for at least $25,000. *Id.* § 35–2106(f).

11. The District's statutory minimum ($25,000) for uninsured motorist coverage, not the optional coverage allowed ($100,000), reflects the District's interest at issue here, since only the lesser amount is required for everyone.

12. As discussed *supra*, the Restatement § 193 states that a state with a more significant relationship to the transaction may properly have its laws applied. The Restatement directs that the factors set out in § 6, the general choice-of-law principles, be considered. These include:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 6 (1971). The discussion throughout this opinion indicates that the proper law to be applied is that of Maryland. The policies of Maryland, includ-

policy.[13] They argue that the trial court erred in determining that the Disability Act benefits should be deducted from the limits set out in the uninsured motorist policy and, instead, should have been deducted from the entire jury verdict of $200,000. They cite *American Ins. Co. v. Tutt*, 314 A.2d 481, 484 (D.C.1974) for the proposition that "all sums which the insured or his legal representative shall be legally entitled to recover as damages meant that the deductions should be taken from the full measure of damages." (Citing *American Ins. Co. v. Tutt*, 314 A.2d 481, 484 (D.C.1974)).

To adopt the Vaughans' argument would ignore the language and the intent of the insurance policy. A jury verdict conceivably could be much greater than the amount set forth in the policy and lead to practically unlimited liability for an insurance company, despite the fact that the parties to the contract bargained for a limitation on recovery. Also, their argument disregards the language of the contract specifically at issue in this case, which is different from the language of the contract in *Tutt*.

Nationwide bargained under the laws of Maryland that its liability would be limited to the Vaughans' policy amount of uninsured motorist payments, minus any benefits received by the insured through workers' compensation or other programs. The tortfeasors in the automobile accident were not parties to the agreement between Nationwide and the Vaughans. To deduct the workers' compensation payments from the total verdict would result in Nationwide being unable to obtain the benefit of its contractual agreement and would reward the three tortfeasors against whom the Vaughans have defaults, as the total judgment would be

reduced. Therefore, the joint and several liability of those three defendants would be reduced, rather than only the judgment with respect to Nationwide's liability.

In *Tutt*, as the Vaughans correctly recognize, the policy stated that the deductions would be subtracted from "all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile." *Id.* at 483 n. 2. In the Nationwide policy, the deductions are to be taken from "[t]he limits of this coverage and/or any amounts payable under this coverage." This is the benefit for which Nationwide contracted.

The distinction between the policies was recognized by Judge von Kann in *Millender v. Nationwide Ins. Co.*, 119 Daily Wash. L. Rptr. at 1957 (D.C.Super.Ct. Sept. 12, 1991):

the *Tutt* Court did *not* state that an insurance carrier could never write a contract which reduces the amount of benefits payable under its uninsured motorist coverage by the amount of payment made to the insured for worker's compensation or disability benefits. Instead, the Court simply held that the particular policy before it could not be read to contain such a provision, noting that, it is the duty of the insurer to spell out in plainest terms—terms understandable to the man on the street—any exclusionary or delimiting policy provisions.... The delimiting language in Tutt's policy with Aetna is different from the language in Millender's Nationwide policy.... The *Tutt* Court concluded that the delimiting language only operated to reduce the total liability of the uninsured motorist to the insured, and, since the total liability of the unin-

---

ing an express intention of deductions for uninsured motorist payments and an interest in contracts entered within its border are served by application of its laws. The policies of the District are met in that the Vaughans carried more than the minimum amount of uninsured motorist insurance and that Mr. Vaughan was compensated pursuant to the Policemen and Firemen's Disability Act. Significantly, the application of Maryland law also comports with the expectations of the parties to the contract.

13. In their brief, appellants advance the statutory construction canon of *expressio unius est exclusio alterius* to argue that, because the Council of the

District of Columbia specifically mandated that workers' compensation benefits be deducted from PIP payments, but did not mention uninsured motorist insurance in the legislation, this Court is to assume that the intention of the Council was to allow a double recovery. Even if we assumed *arguendo* the correctness of appellants' argument on this point, this factor alone would not change the appropriateness of applying Maryland law under §§ 187 or 193 of the Restatement or application of the governmental interest analysis. Thus, we need not reach or rule on this statutory construction contention.

sured motorist well exceeded the sum of the policy limit combined with the worker's compensation benefits paid, the insurance carrier was liable for the full extent of the policy limit. Here, in an apparent effort to cure the very ambiguity which brought about Aetna's loss in *Tutt*, Nationwide specifically stated that "the limits of [its] coverage" were reduced by the sums received by the insured for worker's compensation. There is nothing unclear or ambiguous about this language. Plaintiff could not have reasonably believed that he was buying anything other than a contract which would provide coverage for his damages to the extent of the policy limit and subject to a reduction for any sums received to compensate him for the injuries suffered.

(Citations and quotations omitted.) Accordingly, we conclude that the policy limitations were appropriately applied and the deduction of workers' compensation benefits were correctly taken from the $100,000 policy limitation and not the $200,000 jury verdict.[14]

## II. Judge Milliken's Post–Trial Order

■ The second appeal addresses the timeliness of Nationwide's Motion to Alter or Amend Judgment and the inclusion of Ms. Vaughan's loss of consortium claim within the limit of Nationwide's $100,000 maximum liability. After judgment was entered in the amount of $200,000, pursuant to the jury verdict, the Vaughans filed a timely notice of appeal of Judge Wynn's Order. Despite the fact that their appeal was noted, they attached Nationwide's bank account for the full $200,000 judgment, which included Ms. Vaughan's claim for loss of consortium, less the $74,576.71 that Nationwide had submitted in satisfaction of its obligation.[15] Nationwide's motion sought to amend the judgment

to reflect the limit of Nationwide's liability at $100,000 less any workers' compensation received by Mr. Vaughan and to quash the attachment of the bank account.

The Vaughans maintain that Nationwide's motion, filed more than three months after judgment was entered, was untimely as a matter of law. They argue that the motion was properly a Rule 59 motion which is subject to a 10–day time limit. *See* D.C.Super. Ct. Civ. R. 59. It is further argued that the first time Nationwide addressed the validity of Ms. Vaughan's loss, of consortium claim was in the post-trial motion. Because Nationwide did not assert this argument until the post-trial pleadings, the Vaughans argue that the defense effectively was waived. Accordingly, they argue that Judge Milliken erred in granting Nationwide's motion and in quashing the attachment of Nationwide's bank account.

■ The Vaughans' argument, however, overlooks the fact that the other defendants were involved in this lawsuit. There was no reason for Nationwide to move to amend the judgment after the jury verdict because Judge Wynn's Order controlled the matter and was binding on all parties. Therefore, Nationwide's responsibility already was defined by that Order. Notwithstanding the fact that Nationwide's liability was limited to the terms of the insurance policy, the Vaughans were, and indeed still are, free to collect the remainder of the judgment from the actual tortfeasors involved. The Vaughans already have defaults against these defendants and may obtain judgments against them and attach their bank accounts, obtain a lien on any property owned by them or initiate any other applicable collection proceedings to recover the remainder of the judgment.

■ Rule 59(e) provides that a motion to alter or amend judgment must be filed within

**14.** Appellants also contend that the motions court erred in rejecting the decision in *District of Columbia v. Jackson*, 451 A.2d 867 (D.C.1982), a collateral source rule case. *Jackson*, however, is distinguishable from the present case. In *Jackson*, the District of Columbia argued that the collateral source rule did not apply and that the District should receive a set-off from the damages award for amounts paid to the injured party through the District of Columbia Medicaid program. *Id.* at 871. The court found that because the Medicaid payments did not derive from a source collateral to the District of Columbia, to

apply the rule would result in not only a double recovery for the plaintiff, but also a double payment for the tortfeasor. *Id.* at 871–73. Appellants' attempt to apply the same policy here is unpersuasive. Nationwide is an insurer, not a tortfeasor, and it is inappropriate to apply a collateral source decision to the facts of this case.

**15.** The $74,576.71 reflects the $100,000 uninsured motorist policy limitation minus the compensation Mr. Vaughan received from the Disability Act.

10 days after judgment is entered. The ten day limitation may not be extended. *Frain v. District of Columbia*, 572 A.2d 447 (D.C. 1990). The time limitations of Rule 60 are, at the minimum, a year; for some subsections of Rule 60 no limitations are prescribed so long as the motion is filed within a reasonable time. Judge Milliken concluded that the matter was "properly considered by the court pursuant to Rule 60(b)(6) since the judgment as pursued by plaintiffs runs counter to Judge Wynn's pretrial order." [16]

At oral argument, counsel for Nationwide relied primarily on Rule 60(b)(5), which provides for relief from judgment when "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." D.C.Super. Ct. Civ. R. 60(b)(5). Nationwide also argued that subsections of D.C.Super. Ct. Civ. R. 60, namely 60(a), (b)(1) and (b)(6), are applicable as well.[17]

Nationwide did not waive its rights by failing to move for an amended judgment pursuant to Rule 59. While it may have been more precise if Nationwide's trial counsel specifically had sought to insure that the judgment included the limitation ordered by Judge Wynn, on these facts counsel's failure to do so should not lead to a change in Nationwide's liability nor alter the binding effect of Judge Wynn's Order. All parties knew Nationwide's limitations with respect to the judgment as they were expressly defined in Judge Wynn's Order. By attaching Nationwide's bank account despite the pending appeal, the Vaughans' counsel ignored Judge Wynn's Order. Nationwide had no reason to expect that it would be liable beyond the amount set in Judge Wynn's Order, and therefore had no reason legally to move to amend the judgment prior to the attachment of the bank account.

The judgment for $200,000 in and of itself is valid and should not be amended. As recognized by Judge Milliken, neither the jury award nor the entry of judgment changed Judge Wynn's prior ruling. The Vaughans may recover the balance not obtained from Nationwide from the defaulted defendants. Additionally, Nationwide believed reasonably and in good faith that it had satisfied the judgment with respect to its liability by submitting the check to the Vaughans' counsel. It was not error to consider Nationwide's motion pursuant to Rule 60.

■ The Vaughans' final argument is that Nationwide did not address the validity of Ms. Vaughan's loss of consortium claim until the post-trial motion to alter or amend and, because the issue was untimely, Nationwide should be compelled to pay an additional $50,000 to satisfy Ms. Vaughan's loss of consortium claim. Moreover, they argue, the issue was not raised in Judge Wynn's Order

**16.** Notwithstanding appellants' characterization of the motion before Judge Milliken as one under Rule 59, the motion, in fact, was one filed under Rule 60. Although styled as a "Motion to Amend Judgment", the motion stated that it was filed pursuant to Super.Ct.Civ.R. 60(b)(1) and the supporting memorandum made it clear that Nationwide was seeking "a reduction of the judgment against it to reflect the maximum allowable recovery in this case, less the reductions ordered by Judge Wynn." The practical effect of Nationwide's motion, procedurally akin to a post-trial declaratory judgment, was not to change the judgment, but to limit its liability under the judgment in a manner consistent with Judge Wynn's order. There were, after all, additional tortfeasors who were and are liable for the judgment. Indeed, from a procedural perspective, the circumstances here are like those in *Snowden v.*

*D.C. Transit System, Inc.*, 147 U.S.App.D.C. 204, 205 n., 454 F.2d 1047, 1048 n. 4 (D.C.1971), where a post-judgment motion to reduce the liability of the verdict defendant by the amount paid by the settling defendant was treated under Rule 60(b), not Rule 59(e).

**17.** Rule 60(a): "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the Court at any time of its own initiative or on the motion of any party and after such notice, if any, as the Court orders." Rule 60(b)(1): relief from judgment for reason of "[m]istake, inadvertence, surprise, or excusable neglect"; Rule 60(b)(6): relief from judgment for "any other reason justifying relief from the operation of judgment".

limiting Mr. Vaughan's claim to $100,000, less benefits received pursuant to the Disability Act.

Nationwide argues that Mr. and Mrs. Vaughan together were subject to the $100,000 limit in the policy pursuant to the language of the insurance contract. As explained in their brief: "The Nationwide policy provides a $100,000 '[b]odily injury' limit 'for any one person' (Mr. Vaughan, the only 'person' here who sustained 'bodily injury') 'for all legal damages claimed by anyone' (including Mrs. Vaughan) 'for bodily injury' (Mr. Vaughan's claim) 'or loss of services of one person' (Mrs. Vaughan's claim) 'as a result of one occurrence' (the motorcycle accident)." We agree with Nationwide that the language of the policy is clear and that the claims of the Vaughans are considered to be one.[18]

*Affirmed.*

18. This outcome is also consistent with the D.C. Circuit's decision in *GEICO v. Fetisoff,* 294 U.S.App. D.C. 279, 958 F.2d 1137 (1992). In this case the circuit court interpreted very similar language in an insurance policy and found that:

> Mr. Whitney's claim clearly "arises out of" his wife's injury; Mr. Whitney would have no claim for loss of consortium under the insurance policy absent the injury suffered by Mrs. Whitney in an accident covered by the policy. As a result, Mr. Whitney's claim, like "all damages" stemming from Mrs. Whitney's injury, is subject to the "each person" limitation. Surely the word "all"—one of the least ambiguous in the English language—leaves no room for uncertainty as to the inclusion of Mr. Whitney's claim. And even if some doubt about the purview of the "each person" limitation did remain, it is removed by the dependent clause "including damages for care and loss of services," which plainly refers to consortium-type claims.

*Id.* at 284, 958 F.2d at 1142.