## ADOLPH COORS COMPANY and Coors Brewing Company, Appellants,

v.

## TRUCK INSURANCE EXCHANGE, Appellee.

**No. 07–CV–551.**

District of Columbia Court of Appeals.

Argued Oct. 28, 2008.

Decided Nov. 26, 2008.

Stephen G. Weil, with whom Mark H. Kolman and Scott N. Godes were on the brief, for appellants.

H. Thomas Watson, with whom Barry R. Levy and Christopher T. Lutz were on the brief, for appellee.

Before KRAMER and THOMPSON, Associate Judges, and FARRELL, Associate Judge, Retired.

THOMPSON, Associate Judge:

Truck Insurance Exchange ("TIE" or the "insurer") contracted to indemnify Adolph Coors Company and Coors Brewing Company (collectively, "Coors" or the "insured") for damages the insured had to pay "because of bodily injury caused by an occurrence to which this insurance applies" during the policy coverage periods. TIE further contracted to defend Coors in any suit "seeking damages on account of such bodily injury, even if any of the allegations of the suit are groundless, false, or fraudulent." Subsequently, Coors and several other alcohol manufacturers became defendants in five putative class action lawsuits [1] that included allegations of unfair business practices, unjust enrichment, negligence, civil conspiracy, and corrupt activity, all in connection with the marketing of alcoholic beverages to underage consumers.[2] TIE refused to defend Coors in these suits,

---

1. The five lawsuits are *Hakki v. Zima Co.* ("*Hakki*"), *Wilson v. Zima Co.* [("*Wilson*")], *Kreft v. Zima Beverage Co.* ("*Kreft*"), *Eisenberg v. Anheuser–Busch, Inc.* ("*Eisenberg*"), and *Tully v. Anheuser–Busch, Inc.* ("*Tully*"). Because the plaintiffs in these suits assert virtually identical allegations against Coors, we refer to them collectively, using the terms "underlying suits," "underlying plaintiffs," "class plaintiffs," and "underlying complaints."

2. Five additional lawsuits that are similar to the underlying suits—*Bertovich v. Advanced Brands & Importing Co., Tomberlin v. Adolph Coors Company, Sciocchetti v. Advanced Brands & Importing, Konhauzer v. Adolph Coors Company,* and *Alston v. Coors*—named Coors as a defendant after Coors initiated its action against TIE. During the trial court proceedings, Coors noted this development in its statement of material facts not in dispute and in its brief in support of its motion for summary judgment against TIE. However,

prompting Coors to commence the instant litigation against TIE for breach of its insurance contract (specifically, breach of the "duty to defend"). The Superior Court granted summary judgment to TIE, concluding that TIE had no duty to defend because "this Court cannot find that the lawsuits allege damages that occurred as a result of bodily harm." [3] We affirm the grant of summary judgment in favor of TIE.

## I.

■ We review the grant of a motion for summary judgment *de novo*. *Joeckel v. Disabled Am. Veterans*, 793 A.2d 1279, 1281 (D.C.2002). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Woodland v. District Council 20*, 777 A.2d 795, 798 (D.C.2001). Thus, in examining the instant appeal, we examine whether "there is no genuine issue of material fact on which a jury could find for the non-moving party." *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983).

## II.

Preliminarily, we must determine whether to apply the substantive duty-to-defend law of Colorado or, instead, that of the District of Columbia in deciding the dispute before us. During the Superior Court proceedings, the parties disagreed on this issue, with Coors relying on the District's law in its motion for summary judgment, and TIE advocating application of Colorado law in its opposition. In her Order granting summary judgment to TIE, the trial judge applied Colorado law, but noted that she would have arrived at the same result under the District's law. [4]

■ Choice of law questions are subject to *de novo* review. *Vaughan v. Nationwide Mut. Ins. Co.*, 702 A.2d 198, 200 (D.C.1997). Where a contract is silent on the matter, we conduct a "governmental interest" analysis to determine which jurisdiction's law controls the interpretation and enforcement of the contract. *See Holmes v. Brethren Mut. Ins. Co.*, 868 A.2d 155, 157 n. 2 (D.C.2005); *Vaughan, supra*, 702 A.2d at 202. This analysis requires us to consider several factors, including: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; (5) the residence and place of business of the parties; and (6) the principal location of the insured risk. RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 188, 193 (1971);

---

Coors did not amend its complaint or specifically assert that it sought a judgment with respect to TIE's duty (*vel non*) to defend against these later suits, and the trial court's summary judgment order referred only to five underlying suits. Because the trial court did not decide the duty-to-defend issue with respect to these later suits, that issue is not before us. But, obviously, to the extent the complaints in those matters mirror the complaints in the five underlying suits, our decision may be instructive.

3. The trial judge, the Honorable Natalia Combs Greene, reasoned that:

[T]he complaints in question, while suggesting (or stating) that the representative

plaintiffs (or their purported class members) have suffered bodily injuries as a result of the conduct of Coors, exclude any such injuries in the prayer for relief. Because plaintiffs, in their underlying complaints, specifically limited their alleged damages to monetary damages caused to the plaintiffs (and thereby their representative class), this Court cannot find that the lawsuits allege damages that occurred as a result of bodily harm.

4. The parties' briefs on appeal cite authority from both jurisdictions, but at oral argument their counsel appeared to agree that the trial judge did not err in applying Colorado law.

*see also Vaughan, supra,* 702 A.2d. at 200–03 (citing favorably Restatement (Second) of Conflict of Laws §§ 187, 193).

■ Applying the governmental interest test, we agree with the trial court that Colorado law should govern. Coors Brewing Company both is incorporated and has its principal place of business in Colorado, and Adolph Coors Company likewise has its principal place of business there. TIE, incorporated and headquartered in California, also lacks any relevant relationship with the District of Columbia. Correspondence between the parties indicates that Colorado is where they negotiated and finalized the insurance contract and performed their contractual obligations. Moreover, the parties agreed upon a "Colorado Amendatory Endorsement" to the insurance policy, presumably for the purpose of complying with Colorado law. The District's only apparent connection to the contractual dispute is the *Hakki* lawsuit, the one underlying suit filed in this jurisdiction (the other suits are in the courts of Colorado, North Carolina, and Ohio). Under these circumstances, it seems clear that Colorado has a more "significant relationship" to the Coors–TIE insurance transaction than the District or any other jurisdiction. *See* Restatement (Second) of Conflict of Laws § 188(1).

### III.

■ Under Colorado law, an insurer must defend its insured where the underlying complaint includes allegations that, "if sustained, would impose a liability on the insured that is arguably covered by the policy." *Carl's Italian Rest. v. Truck Ins. Exch.,* 183 P.3d 636, 638 (Colo.Ct.App. 2007) (noting that an insurer's duty to defend its insured against adverse litigation is broader than its duty to indemnify the insured for any judgments resulting from such litigation); *see also id.* at 639

(duty to defend arises if there is "even one claim that is arguably covered by the policy"); *Cotter Corp. v. Am. Empire Surplus Lines,* 90 P.3d 814, 827 (Colo.2004). Colorado courts determine whether a duty to defend exists in a particular case by comparing the face of the complaint with the relevant insurance policy, which should be construed according to contract law principles. *See, e.g., Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1089 (Colo.1991); *Bainbridge, Inc. v. Travelers Cas. Co. of Connecticut,* 159 P.3d 748, 750 (Colo.Ct.App.2006) ("An insurer looks to the four corners of the complaint, together with the policy, to determine its right and duty to defend."); *see also Chacon v. Am. Family Mut. Ins.,* 788 P.2d 748, 750 (Colo. 1990) ("An insurance policy is a contract which should be interpreted consistently with the well settled principles of contractual interpretation."). For purposes of duty-to-defend analysis, factual allegations described in the complaint are more significant than are the particular causes of action asserted. *See Gerrity Co. v. CIGNA Prop. & Cas. Co.,* 860 P.2d 606, 607 (Colo.Ct.App.1993) ("It is, however, the factual allegations in the complaint, and not the legal claims, that determine an insurer's duty.").

Pursuant to the insurance policies at issue, TIE must defend Coors against suits "seeking damages" on account of such bodily injury or property damage [caused by an "occurrence" to which this insurance applies], even if any of the allegations of the suit are "groundless, false, or fraudulent." Bodily injury is defined in the policies as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." Occurrence is defined as "an event, or series of events ..., proximately caused by an act or omission of the insured ... which re-

sults, during the policy period, in bodily injury ... neither expected nor intended from the standpoint of the insured." Thus, TIE has a duty to defend Coors only if the underlying complaints (1) can be read to allege that, through its acts or omissions, Coors caused bodily injury that was both unintentional and unexpected, and (2) seek damages on account of such bodily injury.[5]

## IV.

■ The parties focus their disagreement on whether the underlying complaints "seek damages on account of [ ] bodily injury." Pointing to the class plaintiffs' repeated references to illnesses and accidents associated with underage drinking, Coors maintains that the complaints do seek damages on account of bodily injury and therefore trigger TIE's duty to defend. TIE counters that the complaints' allusions to alcohol-related "human suffering" are only "tangentially-related" to the stated causes of action, through which plaintiffs seek to recover for purely eco-

nomic injury (i.e., the "enormous economic injuries to Plaintiffs and the classes" occasioned by "billions of dollars in family assets [being] transferred to Defendants as part of the far-reaching illegal trade in alcoholic beverages").

■ Clearly, the *Hakki, Kreft, Eisenberg*, and *Tully* complaints do seek relief for (two types of) non-bodily injury suffered by the class plaintiffs themselves.[6] First, the complaints allege economic injury, stating that members of the putative Guardian Class (consisting of parents and guardians whose children purchased and consumed alcohol illegally) suffered "substantial financial losses" and "injury to their business or property" when Coors procured "billions of dollars in family assets" through illicit alcohol sales to their children.[7] Second, the complaints allege that members of the putative Guardian Class and the putative Injunctive Class (consisting of parents and guardians of all children currently under age twenty-one) incur injury when "underage consumers

---

5. TIE also has a duty to indemnify, and a corresponding duty to defend, with respect to suits arising out of property damage. However, Coors does not assert that the property damage provisions of the insurance policies give rise to a duty to defend the underlying suits.

6. The complaints refer, for example, to "[t]he injuries suffered *by the plaintiff classes,*" and to it being "reasonably foreseeable that underage consumers would be induced to illegally [consume alcohol] ... and that *the Classes would be injured thereby.*"

The trial judge focused her analysis on the complaints' specific prayers for relief, and reasoned that "[b]ecause plaintiffs ... specifically limited their alleged damages to monetary damages ... this Court cannot find that the lawsuits allege damages that occurred as a result of bodily harm." We decline to rest our decision on the type of remedies sought through the underlying suits, because that may not be dispositive under Colorado's duty-to-defend case law. *See Compass Ins. Co. v.*

*City of Littleton,* 984 P.2d 606, 622–23 (Colo. 1999) (en banc) (declining to draw a bright-line distinction between legal and equitable remedies). And, in any event, each of the underlying complaints seeks multiple types of relief, including "actual damages [arising from negligence] ... in an amount to be established at trial," restitution, and disgorgement of profits.

7. Such economic harm quite obviously is not "bodily injury." Cf. *Miller v. Triad Adoption & Counseling Serv., Inc.,* 133 N.M. 544, 65 P.3d 1099, 1104 (Ct.App.2003) ("the financial injury alleged in the complaint ... is not a 'bodily injury' [for purposes of the insurer's duty to defend the insured]"); *Rolette County v. W. Cas. & Sur. Co.,* 452 F.Supp. 125, 130 (D.N.D.1978) ("The use of the term 'bodily injury' in the [insurance] policy ... does not include nonphysical harm to the person"), *cited in Nat'l Cas. Co. v. Great Southwest Fire Ins. Co.,* 833 P.2d 741, 746 (Colo.1992).

are induced to illegally consume defendants' alcoholic beverages." This second type of injury perhaps is best characterized as psychological, on the theory that it relates to the distress a parent feels when his child may be exposed to danger. Psychological harm, however, is not bodily injury "when there is no physical impact, fear of physical harm, or physical manifestation of emotional distress." *Nat'l Cas. Co., supra* note 7, 833 P.2d at 746 (construing an insurance policy containing the same definition of "bodily injury" that appears in the TIE–Coors contract). It appears that, in connection with the foregoing allegations, the *Hakki, Kreft, Eisenberg,* and *Tully* complaints describe alcohol-related injury and illness only in order to provide narrative detail rather than to establish a basis for recovery. *Cf. Royal Ins. Co. of Am. v. Boston Beer Co.,* No. 1:04cv2295, 2007 WL 1072166, at *6 n. 5 (N.D.Ohio April 5, 2007) (reading allegations, similar to those in the complaints before us, of "hundreds of thousands of [alcohol-related] deaths, injuries, and illnesses" as "mere[ ] extraneous background references").

 There is, however, another possible reading of the complaints—one that we must consider since we are obligated to construe the underlying complaints in favor of the insured Coors [8]—that could trigger TIE's duty to defend. At least arguably, the underlying complaints can be read to seek redress for "thousands of [alcohol-related] deaths, injuries, and illnesses" to underage drinkers and the public at large—*i.e.,* redress for bodily injury "sustained by *any* person." (emphasis add-

ed). We may assume that claims by class plaintiffs seeking to vindicate the rights of the general population are vulnerable to dismissal on grounds of standing. *See, e.g., Adams v. Land Servs., Inc.,* 194 P.3d 429, 433 (Colo.Ct.App.2008). But the likelihood of success of the underlying complaints does not determine TIE's duty to defend, because TIE promised to defend Coors even against suits that are "groundless, fraudulent, or false."

To our knowledge, Colorado courts have not opined on whether a complaint against an insured that asserts a claim for which the plaintiff lacks standing—*e.g.,* a complaint in which the plaintiff seeks a legal remedy for bodily injuries suffered by the general population—triggers an insurer's duty to defend under a policy like the one at issue. But a court elsewhere, albeit in an unpublished opinion, has suggested that the answer to that question could be "yes." *See Scottsdale Ins. Co. v. Nat'l Shooting Sports Found., Inc.,* No. 99–31046, 2000 WL 1029091 (5th Cir. July 11, 2000) (explaining, in a case involving an insurer's duty to defend its insured in handgun liability actions filed by municipalities, that "[w]e reject [the insurer's] contention that [the] 'because of bodily injury' provision requires that the plaintiff seeking damages be the one who suffered the bodily injury"). Because we cannot confidently conclude that Colorado courts would hold that TIE has no duty to defend suits seeking redress for bodily injury sustained by *any* person, we proceed to consider what TIE has argued is the second reason why the underlying suits did not trigger the duty to defend.[9]

---

8. *See Compass Ins. Co., supra* note 6, 984 P.2d at 613–14 ("Where ... there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim.").

9. Moreover, Coors has a viable argument that the *Wilson* complaint (see note 1, *supra* ) does seek damages "because of bodily injury" to one of the plaintiffs in that suit. Plaintiff Joseph Wilson alleges that he personally consumed alcohol while under the age of twenty-

## V.

If the underlying complaints allege that Coors' acts or omissions resulted in harm that was "not expected or intended," TIE must provide a defense, but if they allege "expected" or "intended" harm, TIE has no duty to defend. Coors argues that there is a duty to defend because the inclusion of a negligence count in each of the complaints establishes that the underlying plaintiffs sought relief from the unintended effects of Coors' allegedly unreasonable acts. But, viewing the complaints in their entirety, we do not believe it is even "arguable" that the class plaintiffs sought relief on account of injuries that, from Coors' perspective, were unexpected or unintended. *See Compass, supra* note 6, 984 P.2d at 613–14.

To begin with, the complaints unambiguously characterize Coors' conduct as purposefully harmful. Each complaint begins with an accusation that Coors and other alcohol manufacturers injured the class plaintiffs through the operation of "a long-running, sophisticated, and deceptive scheme . . . to market alcoholic beverages to children and other underage consumers" in order to "generate billions of dollars per year in unlawful revenue." [10] Underscoring the point, several of the class complaints specifically disclaim concern with "the incidental exposure of children to alcoholic beverage advertising that is properly and reasonably directed to adults." [11] The lawsuits instead "seek[ ] redress *only* for the deliberate and reckless targeting of underage consumers." (emphasis added). Accordingly, notwithstanding the pleading of a negligence claim,[12] it is clear that the

---

one, and the complaint implies that he is among the underage drinkers who may have suffered "bodily injury" insofar as "alcohol consumption causes brain damage."

10. Filling out the remainder of the complaints are charges that Coors and its co-defendants "engage in active, deliberate, and concerted efforts to maximize their profits," "use [ ] code words to conceal and disguise research and marketing efforts directed at children," "believe that it is crucial to establish [an alcohol] brand preference at a very early age," "knowingly and deliberately place their print advertisements in publications which are disproportionately read by underage consumers," "knowingly and deliberately design and operate their web sites to appeal to underage consumers," and "knowingly and purposely sell and distribute apparel, toys, and other logo merchandise designed to appeal to underage consumers." More succinctly, Coors is said to "wilfully, intentionally, recklessly, and negligently engage[ ] in extensive unfair and deceptive marketing efforts," "routinely and intentionally advertise[ ] its alcoholic beverage products in [youth-oriented] publications," and make "false, unfair, and deceptive representations that its advertising and marketing efforts are in compliance with [the alcohol industry's ethical guidelines]." The complaints' "negligence" counts continue the theme, asserting not that the alcohol

manufacturers "failed" to exercise due care, but that they "refuse[d] to take reasonable steps" to avoid "inducing" consumption of their products by underage individuals. *See, e.g., People v. Anyakora*, 162 Misc.2d 47, 616 N.Y.S.2d 149, 152 (N.Y.Sup.Ct.1993) ("Fail" means *"involuntarily* to fall short of success [but] '[r]efusal' . . . implies the *positive* denial of an application or command, or at least a *mental determination* not to comply") (internal citations and quotations omitted).

11. *Kreft:* ¶ 4, JA 449; *Eisenberg:* ¶ 4, JA 479; *Tully:* ¶ 4, JA 548.

12. *See Lopez ex. rel. Lopez v. Am. Family Mut. Ins. Co.*, 148 P.3d 438 (Colo.Ct.App.2006) (insurer had no duty to defend under intentional acts exclusion where underlying plaintiff's complaint pled negligence but stated only that insured's minor son had shot plaintiff three times); *Horace Mann Ins. Co. v. Peters*, 948 P.2d 80, 85 (Colo.Ct.App.1997) (complaint alleging sexual assault by the insured fell within the "intentional acts" exception to insurer's duty to defend, despite its inclusion of negligence claims); *Colorado Farm Bureau Mut. Ins. Co. v. Snowbarger*, 934 P.2d 909, 911 (Colo.Ct.App.1997) (same) (relying on *Allstate Ins. Co. v. Troelstrup*, 789 P.2d 415 (Colo. 1990)); *Gerrity, supra*, 860 P.2d at 608 (holding that, in light of the facts it stated and

underlying litigation exclusively targeted Coors' intentional conduct.

Second, even if, as Coors contends, the complaints do not suggest that Coors "wanted to hurt minors" through its intentional acts, that argument does not advance Coors' position. This is because Colorado's duty-to-defend jurisprudence does not distinguish between the desire to engage in activity that is harmful, and the desire to actually cause harm. *See, e.g., Hecla, supra,* 811 P.2d at 1088. In *Hecla,* the Colorado Supreme Court interpreted an insurance agreement which, like the policies at issue, defined covered "occurrences" as including only those acts or omissions for which injury was "neither expected nor intended" from the standpoint of the insured. The court held that this language should be read to exclude coverage only for results "that the insured knew would flow directly and immediately from its intentional act." *Id.* Here, the complaints state, for example, that alcoholic beverages are "unusually dangerous products which are a well established cause of numerous injuries, illnesses, and deaths ..." and allege that Coors employed a long-running and sophisticated scheme "to market alcoholic beverages to children" despite the common knowledge that underage drinking is dangerous. They assert that Coors attempted to "conceal" and "disguise" its activities, implying that Coors and other alcohol manufacturers understood, and therefore sought to hide, the potential for harm.

Thus, under any reasonable reading, the complaints allege that Coors knew that underage drinking and its accompanying dangers "would flow directly and immediately" from its actions. Whether Coors maliciously wished harm upon underage consumers—or, more precisely, whether the underlying complaints accuse it of such malice—is irrelevant. *See Fire Ins. Exch. v. Bentley,* 953 P.2d 1297, 1301 (Colo.Ct. App.1998) (concluding that insured's purposeful tape-recording and broadcasting of a sexual encounter fell within insurance policy's intentional acts exclusion because injury was "reasonably foreseeable as a matter of law" even if insured did not "intend[ ] to injure"); *see also Cotter, supra,* 90 P.3d at 823 ("an insured's expectation of damage [to the environment] is irrelevant, and the only necessary inquiry is whether the discharge [of contaminants] was unexpected and unintended").

Because the underlying complaints allege and seek relief on account of injury that resulted from Coors' intentional commission of harmful acts, we hold that they did not trigger TIE's duty to defend. Accordingly, the order of the trial court entering summary judgment in favor of TIE is

*Affirmed.*

---

despite its multiple references to "negligent" acts, plaintiff's complaint gave rise only to a breach of contract action against the insured).